Fredda Sue MOWBRAY, Appellant,

v.

Kristin AVERY (Formerly Known as Kristin Mowbray) and Virginia Hale, Appellees.

No. 13–00–124–CV.

Court of Appeals of Texas, Corpus Christi.

April 11, 2002.

D. Patrick Long, Judith Bagley, Patton Boggs, Dallas, for Appellant.

Craig H. Vittitoe, Roger W. Hughes, Adams & Graham, Harlingen, for Appellees.

Before Justices HINOJOSA, CASTILLO, and AMIDEI [1].

## OPINION

Opinion by Justice CASTILLO.

Appellant Fredda Sue Mowbray appeals the judgment of the trial court, dismissing her petition for the imposition of a constructive trust and for a bill of review of a summary judgment in a prior suit entered over six years earlier. In the prior proceeding, the trial court had granted a summary judgment finding, after her criminal conviction for killing her husband, William "Bill" Mowbray, that appellant was not entitled to the proceeds insuring Bill Mowbray's life. Appellant filed a petition for a bill of review of that decision after she was acquitted in a subsequent criminal trial after a writ of habeas corpus was granted that reversed her original conviction and ordered a new trial. Appellant asks us to review whether the trial court erred in: (1) sustaining special exceptions to her second amended petition for bill of review; (2) considering appellees' late supplement to the motion for summary judgment; (3) considering appellee's motion for summary judgment which was not supported by conclusive competent summary judgment evidence; (4) granting summary judgment on the ground of limitations; (5) granting summary judgment on the ground that

there was no extrinsic fraud that prevented her from presenting a defense; and (6) granting summary judgment on the ground that she failed to exercise due diligence in filing a petition for bill of review. We affirm the judgment of the trial court.

## THE PARTIES

Forty-three years old at the time of his death, Jay William Mowbray, Jr. ("Bill Mowbray") died of a gunshot wound to the right temple on September 16, 1987. Fredda Sue Mowbray, his second wife, was charged with, convicted of, and, after retrial, acquitted of murder. Kristin Mowbray Avery ("Avery") is the daughter of the deceased. Virginia Hale is the ex-wife of the deceased and mother of Kristin Avery.[2] Jeanne N. Mowbray is the mother of the deceased.

## PROCEDURAL HISTORY

### I. THE CRIMINAL CASE

On June 9, 1988, Fredda Sue Mowbray was convicted by a jury of the murder of Bill Mowbray in cause number 87–CR–1135–A in the 107th District Court of Cameron County, Texas. *Mowbray v. State,* 788 S.W.2d 658 (Tex.App.—Corpus Christi 1990, pet. ref'd.). On December 18, 1996, the court of criminal appeals granted her petition for writ of habeas corpus, finding that the record supported the trial court's findings that the State knew about, but failed to disclose, the blood splatter expert's report which supported the defense's theory and that such favorable evidence would have resulted in an acquittal,

---

**1.** Former Justice Maurice Amidei assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

**2.** On January 10, 1975, Hale and Bill Mowbray were divorced by decree entered in the 107th District Court of Cameron County in

cause number 58, 353–A, styled, "in the Matter of the Marriage of Virginia B. Mowbray and J. William Mowbray, Jr. and in the interest of Kristin Virginia Mowbray." Hale remarried after the divorce. Kristin is addressed by her married surname.

vacated the murder conviction, and ordered a new trial. *Ex Parte Mowbray*, 943 S.W.2d 461, 466 (Tex.Crim.App.1996). After a new trial in 1997, Mowbray was acquitted of the murder of her husband.

## II. THE INSURANCE POLICIES

Central to the underlying dispute between the parties are life insurance proceeds which total $1,755,000 involving the following policies in effect at the time of Bill Mowbray's death.[3]

### A. The Pilot Life Policy and the Transamerica Life Policy

Pursuant to an agreement incident to the divorce of Bill Mowbray and Hale, proceeds from Pilot Life Insurance Policy number 824540 (or its substitute) in the amount of $130,000.00 were payable to Virginia Hale with Avery as the "third party beneficiary."[4] Before the decree was entered, on November 14, 1974, Bill Mowbray acquired Transamerica Life Insurance Policy number 5381535 in the amount of $130,000.00, which named Virginia Mowbray as the beneficiary of the policy. On or about July 30, 1986, Bill Mowbray attempted to change the beneficiary on the Transamerica Life Insurance Policy to Fredda Sue Mowbray.

### B. The West Coast Life Policy

On November 18, 1982, Bill Mowbray purchased West Coast Life Policy number 654276 in the face amount of one million dollars. In the beneficiary provision, he listed the Small Business Administration ("SBA") and the Brownsville National Bank of Commerce to the extent of "loan balances." He added Avery, identifying an amount of "$130,000.00" and Fredda Sue Mowbray "to receive the remaining balance of the policy proceeds." Later, Avery was listed as the first and primary beneficiary. Avery's subsequent lawsuit alleged that Bill Mowbray attempted to change the beneficiary of this policy to Fredda Sue Mowbray, subject to the interests of the SBA, a lender. The lawsuit alleged that Fredda Sue "never signed nor authorized her husband to sign her name to the change of beneficiary form;" rather, Bill Mowbray "forged her signature on the said change of beneficiary form, and she was not told of his actions and had no knowledge whatsoever of any such attempt to change the beneficiary."[5] Part of the proceeds of the policy were paid to the SBA and Mbank–Brownsville with the balance of the proceeds unpaid.

### C. The Transamerica Policy No. 5878392

Jeanne Mowbray received the $50,000.00 proceeds of this policy.

### D. The Gulf Atlantic Policy

The proceeds of policy number 195651 in the amount of $25,000.00 and number 196538 in the amount of $250,000.00 were paid to the SBA or to Mbank–Brownsville.

## III. THE FIRST LAWSUIT: KRISTIN AVERY ET AL V. FREDDA SUE MOWBRAY ET AL

### A. History

In 1987, appellees Kristin Avery and Virginia Hale, individually and as trustee, filed a lawsuit in the 107th District Court

---

**3.** A $10,000 policy with Employers Health Insurance Company insuring Bill Mowbray in the event of accidental death is identified but not a subject of the underlying dispute.

**4.** The agreement had been a separation agreement ultimately "filed concurrently with the decree."

**5.** The form, dated July 11, 1986, reflects the signature of a witness, Yolanda Ruiz, on the same date.

of Cameron County against appellant Fredda Sue Mowbray. The other defendants in the lawsuit were Transamerica Occidental Life Insurance Company, Gulf Atlantic Life Insurance Company, West Coast Life Insurance Company, R. Scott Mowbray, administrator with the will annexed under the estate of J. William Mowbray, Jr.,[6] and Jeanne E. Mowbray "as an involuntary plaintiff." [7] At the time the lawsuit was filed, Avery was the seventeen-year-old survivor of Bill Mowbray.[8]

The lawsuit, filed under cause number 11–97–5123–A, alleged that appellant had fatally shot her husband, Bill Mowbray, and argued that she should not receive the proceeds of his life insurance policies which designated her the beneficiary. The lawsuit was transferred to the 197th District Court in Cameron County, assigned the cause number 91–05–2140–C, and was ordered continued until after the disposition of Fredda Mowbray's criminal case. Appellant was convicted of the murder of Bill Mowbray. On May 7, 1991, the trial court entered a final summary judgment against appellant, ordering that the life insurance proceeds be paid to appellees. Appellee Avery did not receive all the insurance proceeds; rather, the money was put in the registry of the court and at various times amounts have been released by agreement of the parties.

### B. Allegations

In the lawsuit, Avery and Hale alleged that the insurance companies were withholding the remaining insurance proceeds because of "controversy concerning the cause of death." As to the Transamerica policy, Avery and Hale alleged that Avery had a vested equitable interest by virtue of the separation agreement and divorce decree. As to the West Coast policy, they alleged that because Bill Mowbray had forged Fredda Sue Mowbray's signature on the change of beneficiary form Avery remained entitled to $130,000.00 "perforce of the prior (effective) beneficiary designation, regardless of the circumstances under which Bill Mowbray died." They further alleged that Fredda Sue Mowbray forfeited all interest in the proceeds under all policies by "willfully bringing about the death of the insured." Because Fredda Sue Mowbray was convicted of murder, Avery and Hale alleged that "this Court should take judicial notice and she is barred and collaterally estopped from claiming that his death was the result of anything other than intentional homicide."

Avery sought five million dollars in damages from Fredda Sue Mowbray for the wrongful and untimely death of her father and exemplary damages in the same amount. From the administrator, Avery sought a constructive trust to hold all assets of the estate. The lawsuit requested that the trial court "declare the rights, status and legal relationship between the parties with respect to the insurance policies and estate ... in such a manner as complete relief cannot be afforded among parties already herein ...." The petition alleges that Avery "brings this suit for the benefit of all persons who are beneficiaries under the Texas Wrongful Death Act, including Jeanne, as well as herself.

---

6. The administrator is identified as the "duly qualified representative of Bill Mowbray's estate appointed by County Court at Law No. 1 of Cameron County in Probate Cause No. 25,428–A."

7. Jeanne Mowbray is identified as an "involuntary plaintiff" "inasmuch as she, as well as Avery, is a statutory beneficiary under Tex. Civ. Prac. & Rem.Code 71.004 (the "Texas Wrongful Death Act") and, in her absence,

8. Avery's disabilities of minority were apparently removed by judgment of the 197th District Court in cause number 10–87–4555–C.

will terminate the controversy." The lawsuit also sought attorney's fees.

### C. The Summary Judgment

On March 27, 1991, Avery and Hale filed a document containing four different motions: a motion for partial summary judgment; a motion for reasonable expenses; a motion for costs and attorney's fees; and a motion to sever.[9] The motion for partial summary judgment sought judgment as a matter of law upon three grounds. The first ground sought judgment as a matter of law on the first, third and seventh count of the second amended petition[10] because appellant had forfeited her rights under insurance code article 21.23.[11] The second ground claimed contractual rights of plaintiff, Virginia Hale, to the proceeds of Transamerica policy number 5381525 (the subject of count 1 of the petition) based on the agreement incident to her divorce from Bill Mowbray. The final ground of the summary judgment noted that the $130,000 of the proceeds of the West Coast Life Insurance Company policy number 654276 were already awarded to plaintiffs in the second motion for summary judgment in the same case but asked the court to formally enter judgment of the same as

no interlocutory judgment had yet been entered. In the prayer to the summary judgment motion, appellees asked the court to: 1) find that, because Fredda Sue Mowbray had been shown to have murdered her husband, she had forfeited her interests as beneficiary; 2) name Kristen V. Mowbray as the next of kin of the insured; and 3) order that the proceeds be entrusted to Virginia Hale as Trustee. Appellees also requested that the court enter such further declarations as might be just and right, terminating the controversy between the parties as to the life insurance policies in issue.

In her response to the motion, Fredda Sue Mowbray asserted that she was innocent of the murder of Bill Mowbray, that the court was not bound by the conviction in the criminal case, and that a trial should be held to determine to whom the insurance proceeds should be paid. She urged that it would be incongruous for the court to grant summary judgment on the insurance matters and allow the wrongful death cause of action to proceed on "precisely the same issues." She argued that her summary judgment evidence did "state affirmatively that she did not bring about

**9.** The motions were titled as follows: (1) Fourth Motion for Partial Summary Judgment (Declaring the Rights of the Parties as to Life Insurance Proceeds); (2) Motion for Reasonable Expenses Under Tex.R. Civ. P. 166a(g); (3) Motion for Costs and Reasonable and Necessary Attorney's Fees under Tex. Civ. Prac. & Rem.Code Ann. 37.009 (Vernon 1986) Insofar As Concerns Declarations Pertaining to Insurance Proceeds; and (4) Restated Motion for Severance to Separate the Foregoing Matters from the Balance of the Case.

**10.** The first count claimed Virginia Hale, as trustee for Avery, had an equitable interest in the $130,000 proceeds from Transamerica policy number 5381535. The third count sought a declaration that Fredda Sue Mowbray forfeited all interest in the proceeds payable under all the policies in question in

willfully bringing about the death of Bill Mowbray, that all proceeds should be paid to Avery, and that by her criminal conviction Fredda Sue Mowbray was "barred and collaterally estopped from claiming that his death was the result of anything other than intentional homicide." The seventh count sought declaration of the "rights, status and legal relationship between the parties with respect to the insurance policies and estate ... in such a manner as will terminate the controversy."

**11.** This section provides that the interest of a beneficiary in a life insurance policy or contract is forfeited when the beneficiary is the principal or an accomplice in willfully bringing about the death of the insured. TEX. INS. CODE ANN. art. 21.23 (Vernon Supp.2002).

the death of the insured which creates a genuine issue of material fact."

After a hearing on April 17, 1991, the trial court denied the motion for reasonable expenses and the motion for costs and attorney's fees. After a hearing on April 23, 1991, the 197th district court granted summary judgment in favor of Avery and Hale as to the first, second, and third counts of their petition, as amended.[12] The trial court also granted the motion severing "these counts respecting insurance proceeds" "from the balance of the case" and ordering that "final judgment with respect to such insurance proceeds should be entered in favor of Avery and Hale." [13]

Dated May 7, 1991, the final summary judgment provided,

IT IS ORDERED, DECREED and DECLARED:

1. That because she is shown to have committed the Felony First Degree Murder of her husband, the insured [Bill Mowbray], by shooting him with a handgun, Fredda Sue Mowbray (also known as Freda S. Mowbray) forfeited her interests as beneficiary under all life insurance policies or contracts insuring the life of the insured under Tex. Ins. Code Ann. art. 21.23.

2. That Kristin V. Mowbray, the only child of the insured ... is the next of kin ("nearest relative") of the insured and,

as such, is entitled to all of the rights, titles, benefits and interests in and to all life insurance policies or contracts, insuring the life of [Bill Mowbray] in which Fredda Sue Mowbray was named beneficiary (and no other person was named as contingent beneficiary) specifically including, without limitation, all proceeds of Transamerica Occidental Life Insurance Company life insurance Policies numbers 5381535, 5381046, 5390108 and 5879790, as well as West Coast Life Insurance Company life insurance Policy number 654276 at issue here.[14]

3. That under an agreement of trust dated October 21, 1987, styled "KRISTIN VIRGINIA MOWBRAY FIRST TRUST AGREEMENT," all of the rights, titles, benefits and interests in and to any and all such policies and contracts, including all proceeds thereof, with interest, presently held in the Registry of the Clerk of the Court are entrusted to Virginia Hale as Trustee for Kristin V. Mowbray, and should be paid over and delivered to her in that capacity in accordance with the terms and provisions of such TRUST AGREEMENT, subject to any fees incurred by the Clerk of Court in handling such deposited funds.

4. That such rights, titles, interests and ownerships as are recited in the three

---

12. While the style of the order reflects that it was entered by the 107th District Court in the cause number that had been pending in that court, it is signed by the judge of the 197th District Court and the cause number partially crossed out to change the "A" (reflective of the 107th District Court) to "C" (indicating the 197th District Court).

13. The judgment recites that "final judgment with respect to such insurance proceeds should be entered in favor of the Plaintiffs, Kristin V. Mowbray and Virginia Hale, individually and as Trustee under the Kristin Vir-

ginia Mowbray First Trust Agreement dated October 21, 1987." The record before us does not contain the First Trust Agreement. In the second amended petition, plaintiff Hale is identified as "Kristin's mother and *Trustee* and the divorced wife of Bill Mowbray."

14. The final judgment incorporates the trial court's granting Plaintiffs' Second Motion for Partial Summary Judgment Respecting Proceeds of the West Coast Insurance Policy on September 23, 1988 and denying a motion for severance on that same date.

preceding declarations apply with equal force to all funds heretofore disbursed and distributed pursuant to earlier agreements or motions of the parties, specifically those ordered disbursed under prior Orders of this Court signed on January 13, 1989, May 22, 1989, May 12, 1989, and August 6, 1990.[15]

On June 5, 1991, Fredda Sue Mowbray filed a Motion for New Trial seeking to set aside the final summary judgment, urging that "fact questions remain as to whether [she] brought about the death of Bill Mowbray." [16] No appeal was filed in this action.

## THE SECOND LAWSUIT—THE PETITION FOR BILL OF REVIEW: FREDDA SUE MOWBRAY v. KRISTIN (MOWBRAY) AVERY, ET AL.

On June 14, 1999, Mowbray filed her original petition for bill of review in cause number 99–06–2653–C, suing Kristin Avery and Virginia Hale, individually and as trustee for Kristin Mowbray, as plaintiffs in the prior cause number 91–05–2140–C in which the court entered judgment in 1991.

### A. The original petition and special exceptions

In her bill of review petition, Mowbray alleged that she was prevented from asserting the meritorious defense of acquittal and innocence to the claims against her in the underlying civil case, cause number 91–05–2140–C, due to the wrongful and unconstitutional conduct of state officials, including the intentional refusal to timely disclose material exculpatory information

and the use of manufactured expert test and analysis results. She also alleged she had a meritorious defense in that, following her conviction, she received a new trial whereupon she was acquitted of the murder of Bill Mowbray. She urged she "could not have exercised any level of care in her defense which would have overcome the intentional constitutional violations by the official state actors and their conspirators which caused her conviction and which sealed her fate in cause number 91–05–2140–C" in which the court entered summary judgment. As relief, Mowbray prayed for a new trial and that judgment in cause number 91–05–2140–C be set aside and vacated.

As part of their separate original answers, appellees filed special exceptions complaining of paragraph 9 of Mowbray's original petition, which provided:

9. Mrs. Mowbray was prevented from asserting the meritorious defense of acquittal and innocence to the claims against her in Cause No. 91–05–2140–C due to the unconstitutional conduct of the state officials in her criminal trial including the intentional refusal to timely disclose material exculpatory information and the use of manufactured expert test and analysis results. As a result, Mrs. Mowbray was precluded until her acquittal at re-trial in 1997 from asserting the defense of acquittal and from asserting the defense of actual innocence in a meaningful manner until her 1997 acquittal. Mrs. Mowbray could not have exercised any level of care in her defense which would have overcome the intentional constitutional violations by the official state actors and their con-

---

**15.** The orders identified do not appear in the record before us.

**16.** Apparently this motion was denied on June 10, 1991, however the only evidence of this is

an uncertified copy that, as we later discuss, was not properly before the trial court, and thus not properly before us.

spirators which caused her conviction and which sealed her fate on summary judgment in Cause No. 91–05–2140–C in which this Court entered judgment. Mrs. Mowbray has no adequate remedy on appeal of the judgment entered by this court. Due to the late discovery and determination of the extent of the wrongful conduct which caused judgment to be entered by this Court against her in the above referenced matter, all deadlines for perfecting appeal have passed.

The special exceptions included as part of appellees' separate original answers to Mowbray's petition urged that paragraph 9 in the petition failed to state facts: (1) showing that she had a meritorious defense to appellees' claims for relief in the underlying suit; (2) showing appellees' fraud or wrongdoing obstructed Mowbray in presenting any defense to the underlying claims; (3) showing that, as a result of extrinsic fraud, Mowbray was unable to present any alleged defense to the claims in the underlying case; (4) showing that Mowbray was unable to present evidence or facts supporting her defenses to the alleged claims in the underlying suit; and (5) showing that Mowbray lacked an adequate remedy at law to remedy the alleged injustice.

On October 11, 1999, the trial court entered an Order Sustaining Special Exceptions, allowing Mowbray thirty days to replead.

### B. The first amended petition, special exceptions, and summary judgment motion

On November 10, 1999, Mowbray filed her First Amended Petition for Bill of Review, alleging in relevant part as follows: [17]

9. Mrs. Mowbray was prevented from asserting the meritorious defense of acquittal and innocence to the claims against her in Cause No. 91–05–2140–C due to the unconstitutional conduct *and extrinsic fraud of the officers of the court* in her criminal trial including the intentional refusal to timely disclose material exculpatory information and the use of manufactured expert *testimony.* As a result, Mrs. Mowbray was precluded until her acquittal at re-trial in 1997 from asserting the defense of acquittal and from asserting the defense of actual innocence in a meaningful *manner. Mrs. Mowbray was unable to present evidence or facts supporting her defenses to the claims in the underlying suit because of the unconstitutional and extrinsic fraud of the officers of the court.* Mrs. Mowbray could not have exercised any level of care in her defense which would have overcome the intentional constitutional violations by the *officers of the court* and their conspirators which caused her conviction and which sealed her fate on summary judgment in Cause No. 91–05–2140–C in which this Court entered judgment. Mrs. Mowbray has no adequate remedy on appeal of the judgment entered by this court. *There is no adequate remedy of law to remedy the injustice.* Due to the late discovery and determination of the extent of the wrongful conduct which caused judgment to be entered by this Court against her in the above referenced matter, all deadlines for perfecting appeal have passed.

Avery and Hale again specially excepted to this amended petition, claiming that the amendments did not cure the prior defects. On the same day, Avery and Hale filed their Motion for Summary Judgment, and on December 2, 1999, they filed an Amend-

---

**17.** The allegations, as amended, are italicized here.

ed Motion for Summary Judgment.[18] The trial court set a hearing on appellees' special exceptions for January 5, 2000 and set a submission date for summary judgment as January 20, 2000, providing:

> The decision on this Motion for Summary Judgment will be made by the Court on the basis of the Motion, reply(s) to motions, admissions, affidavits, counter-affidavit, pleadings, depositions, interrogatories and answers to interrogatories timely filed prior to the hearing.

### C. The second amended original petition and special exceptions

On January 4, 2000, Mowbray filed her Second Amended Petition adding a section for "Unjust Enrichment/Constructive Trust."[19] She alleged that as a result of her conviction, "Avery was awarded and received approximately $1 million in insurance proceeds which were originally designated for Plaintiff and real and/or personal property which should have been rightfully inherited by Plaintiff." She added that her acquittal "defeats the necessary condition that Plaintiff was the 'principal or an accomplice in willfully bringing about the death of the insured' as required by the

Insurance Code for forfeiture of insurance proceeds." She further alleged:

> 14. If not for the wrongful conduct of the law enforcement officials, including officers of the court, Plaintiff would have received the insurance proceeds and real and personal property as detailed above. A constructive trust is imposed if a person holding the title to property would be unjustly enriched if he were allowed to retain it.
>
> 15. Defendant Avery is therefore a third party beneficiary of the wrongful conduct by the law enforcement officials. The property received as a result of that wrongful conduct therefore is held in a constructive trust for the benefit of the rightful owner, Plaintiff Mowbray. Courts may impose a constructive trust on a totally innocent beneficiary of wrongful acts.

On that same day, Avery and Hale filed their Special Exceptions to Plaintiff's Second Amended Original Petition asserting that unjust enrichment and constructive trust are not independent, alternative causes of action to a bill of review and that as a matter of law, appellant could not assert either claim without alleging valid grounds for a bill or review. They also argued that as a matter of law, obtaining

---

18. The joint motion for summary judgment alleged four grounds. In their first ground, they argued that, pursuant to section 16.051, TEX. CIV. PRAC. & REM. CODE, Mowbray's petition for bill of review was filed four years too late; she was not entitled to argue the discovery rule or fraud; she was aware of her injury in 1991; she admitted that Avery and Hale did not conceal anything or mislead her; and limitations were not tolled until she was acquitted. The second ground asserted that Mowbray was not prevented from presenting her defenses to either the trial court or the court of appeals as a result of any fraud, accident or mistake attributable to Avery and Hale; Mowbray admits that they were not responsible in any way for the original conviction or alleged concealment of evidence; the district attorneys and agents of the De-

partment of Public Safety are not officers of the 197th District Court; the alleged acts of the district attorney in an independent proceeding in another court do not create any grounds to set aside the trial court's final judgment; and there was no "extrinsic fraud." The third ground contended that (1) nothing prevented Mowbray from presenting her defenses to either the 197th district court or the court of appeals other than her own decision not to submit evidence and not to prosecute an appeal, and (2) she failed to exercise due diligence.

19. The record shows that Fredda Mowbray contested the imposition of a constructive trust in cause number 11–87–5123–A.

property under a judgment could not be unjust enrichment.

### D. Mowbray's summary judgment response

On January 13, 2000, Mowbray filed her Supplemental Response to Defendants' Special Exceptions and Opposition to Defendants' Amended Motion for Summary Judgment urging that Avery and Hale had presented no conclusive summary judgment evidence since it was not presented in a manner in which the evidence would be admissible at trial,[20] the statute of limitations did not bar the petition since the action was filed well within four years after Mowbray's conviction was overturned, and she had shown extrinsic fraud which denied her the opportunity to fully litigate all of the defenses she was entitled to assert in the underlying case. She added that she met all of the elements of a cause of action for fraud and official mistake from a collateral source which is not mixed with any fault or negligence of her own. She also urged that she properly pled a cause of action for constructive trust.

### E. Appellees' Supplement to their Amended Motion for Summary Judgment

On January 13, 2000, appellees filed a Supplement to the Amended Motion for Summary Judgment, addressing Mow-

bray's additional claims of unjust enrichment and constructive trust. Included in the supplement was a request for leave to supplement their previously filed amended motion with additional grounds and exhibits, since Mowbray had added the claims less than twenty days before the summary judgment hearing. They urged that (1) constructive trust/unjust enrichment are not independent claims; and, (2) the new allegations were barred by limitations. On January 19, 2000, appellees filed objections to Mowbray's summary judgment evidence and, in response to her objections, requested that the trial court take judicial notice of its own records contained in their motion for summary judgment. Appellees also re-urged that a district attorney was not a "court official" for the purposes of a bill of review[21] and revisited their limitations argument.

On January 20, 2000, Mowbray filed objections to the supplemental motion that Avery and Hale had filed, urging that it was filed late, but did not allege any prejudice or make any request for a continuance.

### F. Order Sustaining Defendants' Special Exceptions and Granting Motion for Summary Judgment

On February 2, 2000, the trial court signed the order from which Mowbray appeals.[22]

---

**20.** Mowbray objected to "Avery and Hales's unverified documents and references to the record of the prior case" and that no "verification or affidavit was attached to the motion or its amendment." She added that the trial court "has not judicially noticed any of this evidence." She moved the trial court to strike the evidence from the summary judgment record.

**21.** This argument had been made in the brief in support of the special exceptions and in the amended motion for summary judgment.

**22.** The order reads:

BE IT REMEMBERED that on January 5, 2000, came to be heard Defendants' Special Exceptions to Plaintiff's Second Amended Original Petition, and upon consideration of the same, the Court is of the opinion same should be granted.

BE IT FURTHER, REMEMBERED that on January 20, 2000, came to be considered:

(1) Defendants' Motion for Summary Judgment (as Amended);

(2) Defendants' Supplement to Amended Motion for Summary Judgment; and

## ANALYSIS

### I. Special Exceptions

In her first issue, Appellant challenges the trial court's decision to grant appellees' special exceptions to her second amended petition. She also complains of the trial court's action in dismissing the cause without allowing her any opportunity to amend her petition relative to claims raised apart from the bill of review, namely the claim for a constructive trust based on unjust enrichment.[23] Appellees counter that appellant did not state a claim for a bill of review because she did not allege facts: 1) showing extrinsic fraud or mistake by appellees; 2) showing mistake or extrinsic fraud of an officer of the court; or 3) demonstrating how such acts or omissions prevented her from presenting her defense in the original suit. Appellants also argue that unjust enrichment and constructive trust are not independent causes of action and so could not stand apart from the bill of review claim.

### A. Standard of Review

■ Although special exceptions are generally filed to force clarification of vague pleadings, they may also be used to determine whether the plaintiff has stated a cause of action permitted by law. TEX. R. CIV. P. 91; *San Benito Bank & Trust*

*Co. v. Landair Travels*, 31 S.W.3d 312, 317 (Tex.App.—Corpus Christi 2000, no pet.). A defendant may thus challenge the sufficiency of plaintiff's pleadings to state a cause of action by specifically pointing out the defect or reason that the claim is invalid. *Ortega v. Trevino*, 938 S.W.2d 219, 220 (Tex.App.—Corpus Christi 1997), *rev'd on other grounds*, 969 S.W.2d 950 (Tex.1998).

■ If a pleading does not state a cause of action, the trial court does not err in dismissing the whole case. *Holt v. Reproductive Servs., Inc.*, 946 S.W.2d 602, 605 (Tex.App.—Corpus Christi 1997, writ denied). However, if the trial court sustains the special exceptions for failure to state a cause of action, it must allow the pleader an opportunity to amend. *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex.1998)(citing *Texas Dep't of Corr. v. Herring*, 513 S.W.2d 6, 10 (Tex.1974)). The party may then either 1) amend the pleadings to cure the defect, or 2) stand on the pleadings and test the trial court's decision on appeal. *Moseley v. Hernandez*, 797 S.W.2d 240, 242 (Tex.App.—Corpus Christi 1990, no writ)(citing *Hubler v. City of Corpus Christi*, 564 S.W.2d 816, 820 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.)). If the pleader refuses to amend, or the amended pleading fails to state a cause of action, the trial court may

(3) Defendants' Request to Take Judicial Notice.
Upon consideration of the Motion, the Response, and the evidence and public records on file, the Court is of the opinion to take judicial notice of and consider the records as Defendants request, to grant Defendants leave to file their Supplement to Defendants' Amended Motion for Summary Judgment less than 20 days before submission and to grant summary judgment for Defendants.
Therefore, based both on Special Exceptions and the Motion for Summary Judgment, as supplemented, Plaintiff's claims against Defendants should be dismissed.

It is therefore ORDERED that all claims of Plaintiff, FREDDA SUE MOWBRAY, against Defendants, KRISTEN AVERY and VIRGINIA HALE, are hereby dismissed, costs taxed to the Plaintiff.

23. The order sustaining the special exceptions and dismissing the case was issued in the same document which granted Appellee's motion for summary judgment. No specific grounds for either order were given although the trial court did state that "based on both Special Exceptions and the Motion for Summary Judgment, as supplemented, Plaintiff's claims against Defendants should be dismissed."

dismiss the case.[24] *Holt,* 946 S.W.2d at 604. But the trial court may not dismiss a case on special exceptions for failure to state a cause of action if it has not provided the pleader an opportunity to amend his pleading. *Herring,* 513 S.W.2d at 10; *Mestiza v. De Leon,* 8 S.W.3d 770, 774 (Tex.App.—Corpus Christi 1999, no pet.). The protective features of the special exception procedure provide each pleader with this right. *Herring,* 513 S.W.2d at 9–10.

Yet this right to amend only exists if the defect is curable. *Barto Watson, Inc. v. City of Houston,* 998 S.W.2d 637, 641 (Tex.App.—Houston [1st Dist.] 1999, pet. denied). The trial court need not give the plaintiff an opportunity to amend if the pleading defect is the type which amendment cannot cure. *Sepulveda v. Krishnan,* 839 S.W.2d 132, 134 (Tex. App.—Corpus Christi 1992), *aff'd,* 916 S.W.2d 478 (Tex.1995). Additionally, the right to amend does not extend to the privilege of multiple opportunities to amend in the face of repeated grants of special exceptions. If there is no reasonable probability that further amendment would disclose facts legally sufficient to sustain a cause of action, the trial court may properly refuse further leave to amend. *City of Fort Worth v. Gilliland,* 140 Tex. 616, 169 S.W.2d 149, 151 (1943); *Sparkman v. Peoples Nat'l Bank,* 553 S.W.2d 680, 682 (Tex.App.—Waco 1977, writ ref'd n.r.e.). Likewise, once a trial court has sustained special exceptions, if the remainder of a pleading does not state a cause of action, the trial court does not err in rendering a final judgment of dismissal of the entire case. *Cole v. Hall,* 864 S.W.2d 563, 566 (Tex.App.—Dallas 1993,

writ dism'd w.o.j.); *Hubler,* 564 S.W.2d at 820.

Review of a trial court's dismissal of a cause based on the grant of special exceptions requires examination of two distinct rulings: 1) the decision to sustain the special exceptions; and 2) the decision to dismiss the cause of action. *Cole,* 864 S.W.2d at 566. If the decision to sustain the special exceptions was proper, we then review whether the decision to dismiss was appropriate. *Id.* An appellant must specifically challenge both rulings, *Holt,* 946 S.W.2d at 604, or face waiver of the respective issue not challenged. *Cole,* 864 S.W.2d at 566–67. In the present case, although appellant did not raise a specific issue complaining of the trial court's action in dismissing her action based on the grant of special exceptions, we find that the complaint was sufficiently raised in her issue challenging the grant of the special exceptions. *See Meyer v. Shelley,* 34 S.W.3d 619, 622 n. 3 (Tex.App.—Amarillo 2000, no pet.)(regardless of label attached to point of error, tenor of brief indicated that appellants were attacking both the decision to sustain the special exceptions and the decision to dismiss the suit).

We review a trial court's order sustaining special exceptions for abuse of discretion. *Holt,* 946 S.W.2d at 602. The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles or whether the act was arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985); *Pedraza v. Crossroads Sec. Sys.,* 960 S.W.2d 339, 342 (Tex. App.—Corpus Christi 1997, no pet.). A trial court has broad discretion in ruling on

**24.** Summary judgment is also proper under these circumstances or where a pleading deficiency is of the sort that cannot be cured by amendment. *Friesenhahn v. Ryan,* 960

S.W.2d 656, 658 (Tex.1998)(citing *Texas Dep't of Corr. v. Herring,* 513 S.W.2d 6, 10 (Tex. 1974)).

special exceptions. *Burgess v. El Paso Cancer Treatment Ctr.,* 881 S.W.2d 552, 554 (Tex.App.—El Paso 1994, writ denied).

 However, the issue of whether a petition states a claim is a question of law. *Meyer,* 34 S.W.3d at 622. Accordingly, when determining whether a trial court has erred in determining that a petition failed to state a cause of action, the reviewing court must consider the issue *de novo,* "taking all allegations, facts, and inferences in the pleadings as true and viewing them in a light most favorable to the pleader." *Landair Travels,* 31 S.W.3d 312, 317 (Tex.App.—Corpus Christi 2000, no pet.).

Keeping the foregoing rules of law in mind then, we consider each of the special exceptions leveled at the plaintiff's petition in inverse order.

### B. Unjust Enrichment/Constructive Trust

Appellant argues that the trial court improperly sustained special exceptions as to her unjust enrichment and constructive trust claims. She also complains that the trial court should not have dismissed these causes of action without allowing her an opportunity to amend. However, her Second Amended petition does not attempt to raise constructive trust and unjust enrichment as two separate causes of action. Instead it simply asks the trial court to impose a constructive trust and notes that "[a] constructive trust is imposed if a person holding the title to property would be unjustly enriched if he were allowed to retain it." Aside from the caption of the paragraph, this is the only reference to unjust enrichment. We do not read this as raising a *cause of action* for unjust enrichment.

 Moreover, unjust enrichment is not a distinct independent cause of ac-

tion but simply a theory of recovery. *Amoco Prod. Co. v. Smith,* 946 S.W.2d 162, 164 (Tex.App.—El Paso 1997, no writ); *Oxford Fin. Co., Inc. v. Velez,* 807 S.W.2d 460, 465 (Tex.App.—Austin 1991, writ denied); *City of Corpus Christi v. Heldenfels Brothers, Inc.,* 802 S.W.2d 35, 40 (Tex. App.—Corpus Christi 1990), *aff'd,* 832 S.W.2d 39 (Tex.1992). It can be applied where there is a failure to make restitution of benefits received under circumstances which give rise to an implied or quasi-contractual obligation to repay, that is, where a benefit was wrongfully secured or passively received which would be unconscionable for the receiving party to retain. *Oxford,* 807 S.W.2d at 465; *Heldenfels,* 802 S.W.2d at 40. The unjust enrichment doctrine applies the principles of restitution to disputes where there is no actual contract, *Amoco,* 946 S.W.2d at 164, and is based on the equitable principle that one who receives benefits which would be unjust for him to retain ought to make restitution. *Bransom v. Standard Hardware,* 874 S.W.2d 919, 927 (Tex.App.—Fort Worth 1994, writ denied).

 A party may recover under an unjust enrichment theory where a person has obtained a benefit from another due to fraud, duress or taking of undue advantage, *Heldenfels Brothers, Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex. 1992), yet recovery under a theory of unjust enrichment is not dependent on wrongdoing by the opposing party. *Oxford,* 807 S.W.2d at 465 (citing *Fun Time Ctrs., Inc. v. Cont. Nat'l Bank,* 517 S.W.2d 877, 884 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.)). However, to recover under such theory, the profit must be actually unjust under the principles of equity. *Zapata Corp. v. Zapata Gulf Marine Corp.,* 986 S.W.2d 785, 788 (Tex.App.—Houston [1st Dist.] 1999, no pet.). Unjust enrichment is not a proper remedy "merely be-

cause it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall." *Heldenfels*, 802 S.W.2d at 40.

■ While "unjust enrichment" is not per se a cause of action, an action for restitution, or seeking the imposition of a constructive trust, may lie on the legal theory of unjust enrichment. *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 891 (Tex.1998);[25] *Ginther v. Taub,* 675 S.W.2d 724, 728 (Tex.1984); *Oxford,* 807 S.W.2d at 465; *Republic Bankers Life Ins. v. Wood,* 792 S.W.2d 768, 779 (Tex.App.—Fort Worth 1990, writ denied). Appellant's petition clearly seeks to bring an action for the imposition of a constructive trust based on the legal theory of unjust enrichment.

■ We consider then that the true question before us is whether the trial court erred in sustaining special exceptions on, and ultimately dismissing, appellant's claim for a constructive trust based on the theory of unjust enrichment, without allowing appellant an opportunity to amend her petition relative to this claim. There is no dispute that appellant was afforded no opportunity to amend as to this particular claim. The grounds that were asserted in the motion for special exceptions as to the constructive trust claim were that under the facts pled, there were no grounds on which to impose a constructive trust because: 1) as a matter of law the plaintiff could not assert unjust enrichment or a constructive trust because the judgment had to be enforced unless valid grounds were alleged for a bill of review; and 2) as a matter of law obtaining property under a judgment is not unjust enrichment and a judicial award is not fraud, duress or undue advantage.[26] These are claims which if true, would render such alleged pleading defects not subject to being cured by amendment and hence dismissal would be proper. *Sepulveda,* 839 S.W.2d at 134. Thus if the trial court was correct in granting such exceptions, it did not err in dismissing as to that claim without allowing an opportunity to amend. *Id.* However, if a claim for the imposition of a constructive trust could be recognized by law under the facts and circumstances of this particular case, then there would have been no basis for the granting of special exceptions as to that claim since no attack was made on the specificity of the claim or that any elements of a constructive trust were not alleged. Even if such exceptions had been made, and sustained, the trial court could not have dismissed the claim without allowing an opportunity to amend. *Herring,* 513 S.W.2d at 10.

Assuming, for the sake of this discussion only, that the bill of review claim was properly dismissed for failure to state a claim, we consider appellees' related argu-

---

**25.** Although the court in *HECI* refers to "the cause of action" of unjust enrichment, it also refers to unjust enrichment as a "remedy," "basis for recovery" and speaks of a "cause of action *based on*" unjust enrichment. *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 891 (Tex.1998) (emphasis ours). We do not see these statements as recognition of unjust enrichment as an independent cause of action, but simply as a reiteration of the well established principle that a suit for restitution may be raised against a party based on the theory of unjust enrichment.

**26.** An argument was also made that unjust enrichment is not an independent cause of action. As this is a correct statement of the law, and since we do not find that unjust enrichment was pled as an independent cause of action in this case, we do not address this argument but simply consider unjust enrichment in its proper role as the legal theory that is the basis for the recovery sought by way of the constructive trust.

ments that a constructive trust claim cannot be utilized to recover property awarded under a final judgment, absent grounds for the setting aside of that judgment and that the receipt of proceeds awarded by way of a court judgment cannot be an "unjust enrichment" which can give rise to a constructive trust. We review these issues *de novo*, taking all allegations, facts, and inferences in the pleadings as true and viewing them in a light most favorable to the pleader. *Travels*, 31 S.W.3d at 317.

We first note that while it is true that a constructive trust is an equitable remedy, *Estate of Graham*, 69 S.W.3d 598, 602 n. 1 (Tex.App.—Corpus Christi 2001, no pet. h.), it would be overly simplistic to state that therefore a suit for a constructive trust cannot lie as a distinct action. Our case law is replete with suits filed specifically either to impose or enforce a constructive trust. While specific elements must certainly be shown in order for a plaintiff to be entitled to a constructive trust,[27] it would be an incomplete statement of the law to say that a constructive trust is *merely* a remedy. A constructive trust is, rather, "a device equity uses to right a wrong," *Lesikar v. Rappeport*, 33 S.W.3d 282, 303 (Tex.App.—Texarkana 2000, pet. denied), "an equitable tool in the court's power that can infer a fiduciary-like relationship within a transaction for the purpose of promoting jus-

tice." *Harris v. Sentry Title Co., Inc.*, 715 F.2d 941, 946 (5th Cir.1983).

There is some support, however, for appellees' contention that a constructive trust cannot be used to recover property ordered under a final judgment. Although not stated in such terminology, appellees essentially argue that such an action would be an impermissible collateral attack on the judgment. In *Forney v. Forney*, the First District Court of Appeals affirmed a partial summary judgment dismissing a cause of action for a constructive trust because the appellant had failed to prove her right to a bill of review which was also requested. 672 S.W.2d 490, 499 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd w.o.j.). In that case, the petitioner, much like appellant in the present case, had filed a bill of review regarding a prior divorce decree along with a claim for partition on properties alleged not to have been disposed of in the divorce and also a claim seeking a constructive trust of certain interests disposed of under the divorce decree based on the theory of unjust enrichment. *Id.* at 493. The *Forney* court held that "having failed to prove a right to either a bill of review or to partition, appellant is barred as a matter or law from collaterally attacking the divorce judgment on the theories of unjust enrichment and constructive trust." *Id.* at 499. This same conclusion was reached in similar cases by

**27.** Specifically, there must be:
(1) Breach of an informal relationship of special trust or confidence arising prior to the transaction in question, or actual fraud;
(2) Unjust enrichment of the wrongdoer;
(3) Tracing to an identifiable res.
*In the Matter of Monning[Monnig's] Dept. Stores, Inc.*, 929 F.2d 197, 201 (5th Cir.1991) (citations omitted); *Meadows v. Bierschwale*, 516 S.W.2d 125, 128–130 (Tex.1974)(constructive trust can arise out of actual fraud, not just confidential or fiduciary relationship); *Thigpen v. Locke*, 363 S.W.2d 247, 250 (Tex.1962)("equity will impose a constructive

trust to prevent one who obtains property by fraudulent means from being unjustly enriched."); *Omohundro v. Matthews* [161 Tex. 367,] 341 S.W.2d 401, 410 (Tex.1960) ("A fundamental concept of a constructive trust is the prevention of unjust enrichment"). Without proof of the necessary elements, a constructive trust is not properly imposed. *Estate of Graham*, No. 13–00–334–CV, [69 S.W.3d 598, 602] 2001 Tex.App. LEXIS 8481, * 29 n. 1 (Tex.App.—Corpus Christi 2001, no pet. h.)("Because we have found no fraud, constructive trust is not available").

the Dallas court of appeals. *See Curtis Sharp Custom Homes v. Glover,* 701 S.W.2d 24, 25–6 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *McLemore v. Johnston,* 585 S.W.2d 347, 348 (Tex.App.—Dallas 1979, no writ) (constructive trust action was an attempted collateral attack on valid divorce judgment which could only be set aside by bill of review).

However, in 1993, the Texas Supreme Court held that a suit to impose a constructive trust invoked the equity powers of the court and was not a collateral attack on a prior judgment. *State v. Durham,* 860 S.W.2d 63, 67 (Tex.1993). The court cited approvingly language holding that the remedy of constructive trust was "authorized as relief from extraneous fraud and is not in conflict with the rule against collateral attack." *Id.* (citing *Dilbeck v. Blackwell,* 126 S.W.2d 760, 761 (Tex.Civ. App.—Texarkana 1939, writ ref'd)). The court thus found that the State had alleged fraud extrinsic to the judgment and its claim for a constructive trust was not a collateral attack on the prior judgment. *Id.* We note also that the *Durham* case involved a suit to impose a constructive trust upon property which had been part of a lease determined to be "valid and subsisting" in the prior judgment. *Id.*

We are aware that the decision in *Durham* was in a case where there was a clear allegation of extrinsic fraud which was not and could not have been adjudicated at the time of the original trial. *Id.* We need not decide whether the fraud alleged in the present case is intrinsic or extrinsic or whether it could have been adjudicated at the time of the original trial in order to dispose of this issue. There was no special exception raised that the constructive trust claim could not stand because the fraud alleged was intrinsic fraud, nor that it

failed in specificity as to the particular elements to be raised in a constructive trust action based on unjust enrichment. *See* Tex. R. Civ. P. 91 (special exceptions should point out "with particularity" the defect, omission, obscurity, or other insufficiency). Accordingly, we express no opinion on whether the grounds as alleged in the second amended petition fulfilled these requirements. The sole complaints made in the special exceptions as to constructive trust/unjust enrichment were that a claim for a constructive trust could not be made against proceeds which were determined by a prior court judgment because such receipt could not be unjust, and that allowing such a claim would impermissibly allow a party to circumvent the requirements for a bill of review. Having determined that the decision in *Durham* permits such claims, at least under certain circumstances, we find that the trial court erred in sustaining the special exceptions made as to that claim and dismissing appellant's action for a constructive trust based on a theory of unjust enrichment.

## C. Bill of Review

A bill of review is an equitable action brought by a party to a prior action who seeks to set aside a judgment that is no longer appealable or subject to a motion for new trial. *State v. 1985 Chevrolet Pickup Truck,* 778 S.W.2d 463, 464 (Tex. 1989). Traditionally, in order to state a claim for a bill of review, a petitioner must allege: 1) a meritorious defense to the cause of action supporting the judgment; 2) which he was prevented from making by the fraud, accident or wrongful act of the opposing party; 3) unmixed with any fault or negligence of his own. *Alexander v. Hagedorn,* 148 Tex. 565, 226 S.W.2d 996, 998 (1950).[28]

---

**28.** This last requirement "unmixed with any

fault or negligence of his own" refers to the

■■■■ Over time, a body of case law has emerged which allows a petitioner who has been denied the opportunity to present a defense to a prior suit, or file a motion for new trial or appeal of the same, because of the reliance on the improper execution of an official duty by a court functionary, to raise such mistake as an alternative to proving the second element of a bill of review. *McRoberts v. Ryals,* 863 S.W.2d 450, 455 (Tex.1993) (Enoch, J., dissenting); *Transworld Fin. Servs. Corp. v. Briscoe,* 722 S.W.2d 407, 408 (Tex.1987); *Baker v. Goldsmith,* 582 S.W.2d 404, 407 (Tex.1979). This has sometimes been characterized as the "official mistake" doctrine. *Goldsmith,* 582 S.W.2d at 407. It is completely distinct from the "fraud, accident or wrongful act" doctrine, that is,

the classic second element is not extended to cover "fraud, accident or wrongful act" of a court functionary. Indeed, a historical review of the cases recognizing the "official mistake" doctrine demonstrates that in such instances where specific acts of court officials were directly ruled on, such doctrine has been narrowly imposed within the very specific context of a failure by a court or its functionary in the discharge of official duties which prevented the petitioner from exercising his right to challenge a judgment by post-judgment actions or appeal or prevented the petitioner from presenting his contentions in the former action rather than for some general misconduct or wrongdoing of court functionaries.[29] *Ryals,* 863 S.W.2d at 453

necessity of the petitioner to have not been responsible for the failure to advance the meritorious defense which he claims to have been prevented from making by the actions of the opposing party. Although often discussed together, this is distinct from the "due diligence requirement" which is imposed upon a petitioner in order to be entitled *to seek* relief under a bill of review. Under the latter doctrine, before a petitioner is entitled to initiate a claim for a bill of review, he must allege and prove that he has exercised all due diligence to pursue all adequate legal remedies to the judgment in controversy or show good cause for failing to exhaust the same. *Caldwell v. Barnes,* 975 S.W.2d 535, 537 (Tex. 1998); *Griffith v. Conard,* 536 S.W.2d 658, 661 (Tex.Civ.App.—Corpus Christi 1976, no writ). If a petitioner had legal remedies which were available but ignored, relief by equitable bill of review is unavailable. *Wembley Inv. Co. v. Herrera,* 11 S.W.3d 924, 927 (Tex.1999); *French v. Brown,* 424 S.W.2d 893, 895 (Tex.1967). One with an available appeal who fails to pursue that remedy is not entitled to seek relief by way of bill of review. *Rizk v. Mayad,* 603 S.W.2d 773, 775 (Tex. 1980).

In the present case, in addition to their arguments that appellant did not assert facts showing that her failure to advance her actual innocence defense was barred by the district attorney's actions, appellees have advanced "due diligence" arguments. These arguments

were not advanced below in the motion for special exceptions. As "due diligence" arguments are not pertinent to any question before us as to the special exceptions issue, we do not consider them at this time.

29. Appellant has argued for a much broader interpretation of official mistake than that supported by the case law of this state. Although on appeal appellant argues that she was barred from presenting her contention of actual innocence at the original trial, the record reflects that, in fact, she did present this defense and even filed a motion for new trial asserting that the trial court erred in granting summary judgment because an issue as to actual innocence remained. Accordingly, appellant cannot argue that she was prevented from presenting her chosen defense or from filing a motion for new trial or an appeal. Rather, her argument can only be that an official mistake prevented her from presenting her defense in a "meaningful manner" (as she alleged in her petition for bill of review) or from filing an *effective* appeal (which she claims not to have pursued because it was "doomed" by the conduct which led to her conviction). Appellant's citation to *Bridgman v. Moore,* 143 Tex. 250, 183 S.W.2d 705 (1944), does not support her contention that "official mistake" should extend to *any* "breakdown in the judicial process" as the dicta she relies upon in that case merely stood for the proposition that where a court func-

(party deprived of right to appeal by reliance on improper advice of appellate court clerk); *Goldsmith*, 582 S.W.2d at 407 (defendant denied right to present contentions when default judgment entered due to misplacement of his answer by courthouse mail room employee); *Petro–Chemical Transport, Inc. v. Carroll*, 514 S.W.2d 240, 244–45 (Tex.1974)(defendant deprived of opportunity to file motion for new trial due to failure of clerk to send notice of judgment). Essentially, "official mistake" in the context of a bill of review refers to either erroneous information given by the court or an official court functionary or a mistake or error of the same in the discharge of required official duties. *Goldsmith*, 582 S.W.2d at 407; *McDaniel v.*

*Hale*, 893 S.W.2d 652, 663 n. 22 (Tex. App.—Amarillo 1994, writ denied).

In the present case, appellant's second amended petition complains of the "unconstitutional conduct and extrinsic fraud" of "officers of the court" as the basis for her bill of review action.[30] Appellees specially excepted to this petition, urging that appellants failed to state facts that showed: 1) extrinsic fraud or mistake by the defendants; 2) extrinsic fraud or mistake of an officer of the court; and 3) that such acts or omissions prevented appellant from presenting her defense to the summary judgment in the underlying case. Appellant has conceded that there was no fraud, accident or wrongdoing by the adversarial

tionary (in that case, a judge) committed an official error that prevented a party from filing an appeal (in that case because no notice was given of the signing of the judgment), a bill of review would lie—a position completely consistent with the narrow interpretation which Texas courts have given the "official mistake" exception. *See Petro–Chemical Transport, Inc. v. Carroll*, 514 S.W.2d 240, 244 (Tex.1974).

We note also that the conduct appellant complains of occurred *not* in the underlying case but in a completely different proceeding, a fact unprecedented in our review of the case law, perhaps because the supreme court has always strictly limited "official mistake" to official errors which prevented *actual participation in a trial or an appeal of the case.* See discussion supra. But see *In the Interest of T.R.R.*, 986 S.W.2d 31, 37 (Tex.App.—Corpus Christi 1998, no pet.)(finding that the trial court's failure to appoint an attorney ad litem at a termination proceeding in which appellant participated, to be an official mistake for the purposes of a bill of review).

30. In her original petition, appellant had alleged only that the "unconstitutional conduct" of "state officials" prevented her from asserting her meritorious defense of acquittal at the original summary judgment proceeding in the underlying civil case. Although not defining state officials in that paragraph, earlier in the petition she complained that her original conviction was procured by the

"wrongful conduct of the official state investigators and prosecutors and their conspirators." In her second amended petition, which is the one we consider today, she states that the original conviction was procured by "the wrongful conduct of officers of the court and their conspirators" and alleges that she was prevented from asserting her defense due to "unconstitutional conduct and extrinsic fraud of officers of the court in her criminal trial." In this petition, she does not delineate specifically whom she is referring to as being "officers of the court in her criminal trial"— an extraordinarily broad description. However, no special exception was raised on this ground and as all parties appear to agree that this refers to the district attorney (and apparently the assistant district attorneys) in this case, we will likewise assume that these are the "officers of the court" of which she complains.

We also note that nowhere in this petition does appellant ever utilize the term *official mistake* or claim that the district attorney failed to perform *some official duty upon which she relied* and which caused her to fail to assert her defense. However, the failure to state a claim specifically in these terms is not before us and as both parties assume that she did make a claim of official mistake and only dispute whether the actions complained-of can, in fact, constitute official mistake for the purposes of a bill of review, it is that question which we will consider.

party. Further, as noted previously, there is no ground for a bill of review due to the "fraud" of a court functionary or official, but only for any exception limited to an "official mistake" by way of some dereliction of official duty upon which a petitioner has relied, which prevents the petitioner from presenting a defense or filing a challenge to the judgment through normal procedures. Hence the question of whether the district attorney committed fraud, and if so, whether it was extrinsic or intrinsic, is not before this Court as the same is not a ground for a bill of review. We consider only whether: 1) a district attorney is a "court official" in the context of a bill of review petition; 2) if he is, whether in the instant case, the actions alleged would constitute an official mistake that could support a petition for bill of review; and 3) if so, whether there are facts alleged in the petition that show that these actions barred appellant from presenting a defense.

We first observe that, unlike the claim for a constructive trust, the trial court did previously allow for amendment of the bill of review claim as a result of a prior motion for special exception. However, the first motion for special exception only related to the third question before us—whether the petition alleged facts that a mistake by a court official prevented appellant from raising a defense. Thus, if the plaintiff again failed to state a claim as to that issue, after having an opportunity to amend, it would have been well within

the trial court's discretion to dismiss the claim without allowing further opportunity to amend. *Gilliland,* 169 S.W.2d at 151. However, the first two issues were not raised in the first motion for special exceptions and hence the trial court could not dismiss without allowing an opportunity to replead unless the defects could not be cured by amendment. *Sepulveda,* 839 S.W.2d at 134. The first two defects complained of—that the district attorney cannot be an "officer of the court" as such term is used in the context of a bill of review and that the actions alleged to have been committed by the district attorney are not the sort that constitute an official mistake for bill of review purposes—are both defects which amendment could not cure and hence the trial court would have had the discretion to dismiss the cause of action if it sustained either of these exceptions. *Id.* Of course, dismissal would only be proper if the trial court did not err in sustaining the special exceptions to this claim as stated in the second amended petition and it is that decision then that we turn to.

 The first question propounded is whether district attorneys are "court officials" for the purposes of a bill of review. We note that there has been some variation in the language of appellate courts in reference to the "official mistake" exception. The terms "court or a functionary thereof,"[31] "official court functionary,"[32] "official of the court,"[33] "court personnel,"[34] "court official,"[35] "court officer,"[36]

**31.** *Baker v. Goldsmith,* 582 S.W.2d 404, 407 (Tex.1979).

**32.** *Id.*

**33.** *Vogel v. Vogel,* 405 S.W.2d 87, 90 (Tex.Civ. App.—San Antonio 1966, no writ).

**34.** *West Columbia Nat'l Bank v. Griffith,* 902 S.W.2d 201, 205 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

**35.** *Nichols v. Jack Eckerd Corp.,* 908 S.W.2d 5, 8 (Tex.App.—Houston [1st Dist.] 1995, no writ).

**36.** *Transworld Fin. Serv. Corp. v. Briscoe,* 722 S.W.2d 407, 408 (Tex.1987).

"officer of the court," [37] and "officers of the court or official court functionaries" [38] have all been used. Common to all of these descriptions when examined in the context of the bill of review cases in which they appeared is that the official was always under the direct supervision of the court that rendered the judgment or charged with duties that were directly imposed by that court (or by way of appropriate statutes or regulations) for the proper administration of that court's functions and, in those matters, acting on the court's behalf, with three exceptions which we discuss infra. *See* cases cited below and also *Rodriguez v. Holmstrom,* 627 S.W.2d 198, 200 n. 1 (Tex.App.—Austin 1981, no writ)(holding that a justice of the peace was not an official court functionary of the county court at law which issued the original judgment).

It appears that the term "officer of the court" has been freely interchanged with the other similar terms without any special reference to the fact that attorneys are officers of the court, albeit *not* in the same manner as a person generally considered a court functionary, official or personnel. It is certain that "officer of the court" language in the bill of review context was not meant to extend broadly to all attorneys as the supreme court soundly rejected the notion that a petitioner could invoke this language to complain of an action of her own attorney, stating directly that "offi-

cers of the court" in the context of the bill of review "official mistake" exception to proof of extrinsic fraud did *not* include the litigants' attorneys. *Briscoe,* 722 S.W.2d at 408.

Indeed, we have found only three cases where the definition of an "officer of the court" for the purposes of a bill of review was extended to attorneys. The first two involved attorneys for the adversarial party, which would have also fallen under the normal requirements of the second prong of a bill of review, and errors by the clerk of the court, relying on information which the attorneys neglected to correct.[39] The last, an unpublished opinion, summarily assumes that the official mistake exception includes an attorney as an "officer of the court," and its decision appears to have turned on the fact that the judgment in question came about through a failure on the part of an attorney who acted without authority from the petitioner, an action which the reviewing court noted to be sufficient in itself to set aside the former judgment.[40] We are not convinced by any of these cases. Given the narrowness with which the courts have interpreted the "official mistake" exception (and the requirements for bills of review in general,[41]) there is no persuasive authority or justification for extending this exception to cover the actions of all attorneys (including district attorneys) simply because they are

---

**37.** *Gracey v. West,* 422 S.W.2d 913, 916 (Tex. 1968).

**38.** *Matthews Trucking Co., Inc. v. Smith,* 682 S.W.2d 237, 239 (Tex.1984).

**39.** *Buddy "L" Inc. v. Gen. Trailer Co.,* 672 S.W.2d 541 (Tex.App.—Dallas 1984, writ ref'd n.r.e.) and *City of Laredo v. Threadgill,* 686 S.W.2d 734 (Tex.App.—San Antonio 1985, no writ). Like the court in *Mathews v. Harris Methodist,* 834 S.W.2d 582, 584 (Tex.App.—Fort Worth 1992, writ denied), we find these decisions unpersuasive.

**40.** *Seacoast, Inc. v. LaCouture,* No. 03–00–00178–CV, 2000 WL 1862668 (Tex.App.—Austin 2000, pet. denied)(not designated for publication).

**41.** *See Weston v. Van Meter,* 297 S.W.2d 302, 304 (Tex.Civ.App.—Texarkana 1956, no writ), citing the well-known proposition that bills of review are watched with "extreme jealousy," grounds of which will be "narrow and restricted" and the rules not relaxed "merely because it may appear in some particular case that an injustice has been done."

generally "officers of the court" especially as they do not directly act for the court as do court "functionaries," "officials" or "personnel."

Nor is there a justification for finding that because district attorneys are charged with prosecuting cases in the courts of Texas, they are therefore "court officials" as appellant argues.[42] District attorneys are not, by virtue of their office, under the direct control of the courts to any greater extent than any practicing attorney. Indeed, their jurisdiction to act in fulfillment of their official duties is constitutionally protected from court interference. *State ex. rel. Holmes v. Denson*, 671 S.W.2d 896, 899–900 (Tex.Crim.App.1984).

We therefore find that district attorneys are not "court officials" for the purposes of a bill of review. Accordingly, we find the trial court did not err in sustaining the special exceptions as to the bill of review and dismissing this claim. We overrule this issue.

## II. *The Summary Judgment*

Appellant's remaining issues on appeal all relate to actions of the trial court relative to the summary judgment. The summary judgment order in the present case did not specify upon which ground the trial court was granting summary judgment and thus we will uphold the judgment if

any of the grounds in the summary judgment motion can be sustained. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex.1999); *Weakly v. East*, 900 S.W.2d 755, 758 (Tex.App.-Corpus Christi 1995, writ denied).

In her remaining five issues, appellant complains that the trial court: A) improperly considered a late supplement to the motion for summary judgment; B) improperly considered incompetent summary judgment evidence; C) wrongfully granted the motion for summary judgment on the ground of limitations; D) wrongfully granted the motion for summary judgment on the ground of no extrinsic fraud; and E) wrongfully granted the motion for summary judgment on the ground of lack of due diligence. As we have already determined that the trial court properly dismissed the bill of review claim on special exceptions, we need not decide the last two issues asserted, both of which specifically refer to the propriety of the summary judgment on the bill of review claim. We will address the remaining contentions in turn.

### A. *The Supplemental Motion for Summary Judgment*

█ Appellant first complains that the trial court improperly considered appellee's supplemental motion for summary

---

**42.** Appellant's reliance on *Pierce v. State*, 12 Tex. 210 (Tex.1854) and *Meshell v. State*, 739 S.W.2d 246, 253 (Tex.Crim.App.1987), is misplaced. The language relied upon by appellant in *Pierce* is not actually part of the holding but of the recitation of the arguments. The decision in *Meshell* merely acknowledges that the office of prosecuting attorneys was created under the judicial department rather than the executive or legislative. This does not make district attorneys part of a court in any greater way than any other attorney. As stated by the court of criminal appeals in remarking on the general relationship between attorneys and judges:

The relationship of courts and attorneys, bench and bar, are reciprocal, and each, in their proper sphere, is clothed with powers, rights, and privileges which are to be recognized and respected by the other.

*Ex parte Duncan*, [42 Tex.Crim. 661,] 62 S.W. 758, 762 (Tex.Crim.App.1901).

The third case cited by appellant, *State v. Johnson*, 12 Tex. 231 (Tex.1854), simply stands for the unremarkable proposition that a district attorney, like all attorneys in the state, is an officer of the court. This does not provide any authority for finding that the district attorney, by virtue of his office as district attorney, is a court official.

judgment filed on January 12th, less than twenty-one days prior to the submission date of January 20th, arguing that the supplemental motion was thus untimely under Texas Rule of Civil Procedure 166a(c) and that it is error to grant summary judgment on new grounds when a plaintiff has been deprived of the notice and hearing requirements of that rule. While the latter contention is correct, Rule 166a(c) does allow parties to file motions within twenty-one days before the summary judgment hearing upon notice to the opposing party and with leave of court. TEX. R. CIV. P. 166a(c). It lies within the sound discretion of the trial court whether to accept or to consider late filings pursuant to this rule. *Daniell v. Citizens Bank,* 754 S.W.2d 407, 409 (Tex.App.—Corpus Christi 1988, no writ). The record reflects that, in conformity with the rule, appellees provided notice to appellant and requested, and received, leave of court to file the supplemental motion.

Moreover, review of the record reveals that the supplemental motion was filed in response to appellant's second amended petition which itself was filed less than twenty-one days before the submission date for the summary judgment motion. Under those circumstances, appellees were *required* to file a supplemental motion for summary judgment prior to the submission date in order to address the new claims if they wished the court to be able to dispose of the entire case. *Smith v. Atlantic Richfield Co.,* 927 S.W.2d 85, 88 (Tex.App.—Houston [1st Dist.] 1996, writ denied).

■ We note further that while appellant filed a motion in opposition to the request for leave to file the supplemental motion on the day of submission, utilizing the same arguments and authorities cited to this Court, the record does not reflect that appellant ever filed any controverting affidavit claiming that she was prejudiced by this late filing or that she was unable to properly prepare or present controverting affidavits in response to the supplement, nor did she ever request a continuance to do so. By failing to file such affidavit or request a continuance, appellant has waived any complaint. *Pankow v. Colonial Life Ins. Co.,* 932 S.W.2d 271, 275 (Tex.App.—Amarillo 1996, writ denied); *Gonzalez v. Nielson,* 770 S.W.2d 99, 101 (Tex.App.—Corpus Christi 1989, writ denied); *Manhattan Constr. Co. v. Hood Lanco, Inc.,* 762 S.W.2d 617, 619 (Tex. App.—Houston [14th Dist.] 1988, writ denied).

Even without a waiver, under the circumstances of this case, we do not find that it was an abuse of discretion for the trial court to have granted leave to file the supplemental motion for summary judgment and to have considered the same. We overrule this issue.

### B. The Summary Judgment Evidence

■ Appellant next argues that the summary judgment motion was not properly considered because it was not supported by conclusive evidence. Specifically, appellant argues that there was no summary judgment evidence submitted by appellees because unverified documents and references to the record of the prior case are not competent evidence.[43]

**43.** As for the complained-of references to the record of the prior case, this objection is not specific enough for our consideration and so we deem the complaint waived. Appellant does not cite any particular objectionable reference and we have no evidence that the trial court considered any references to a prior case mentioned in the summary judgment motion apart from the attached summary judgment documents which were referred to by said references and which we consider herein.

Review of the documents attached to appellee's motion for summary judgment indicates that all but three were properly allowed as summary judgment proof under the rules.[44] The only documents that were not apparently in permissible form were exhibits four (the order on the summary judgment in the prior civil case), six (the order on the motion for new trial in the prior civil case) and eight (the petition for habeas corpus). The first of these was verified by appellant and offered in her own response to the summary judgment motion and hence we find it proper summary judgment evidence. Thus, there are only two questionable documents for our consideration—the motion for new trial order and the habeas corpus petition.

 Appellees argue that they asked the trial court to take judicial notice of the exhibits as true and correct copies of court records and that the trial court's grant of that request sufficed to render them properly before the court for consideration.[45] The authorities cited by appellees do not support their contentions. Generally, a court may take judicial notice of records of its own or another court's records (such as in the habeas corpus case) when they are provided by the proponent, however, this does not relieve the proponent from the responsibility of providing them to the court *in a form acceptable for summary judgment proceedings,* i.e. either sworn to or certified. *Gardner v. Martin,* 162 Tex. 156, 345 S.W.2d 274, 276–77 (1961); *Murillo v. Valley Coca–Cola Bottling Co.,* 895 S.W.2d 758, 762 (Tex. App.—Corpus Christi 1995, writ denied); *Serna v. Reyna,* 418 S.W.2d 701, 703 (Tex. Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.). As the habeas corpus petition and the order on the motion for new trial in the underlying civil suit were neither verified nor certified, they were not proper summary judgment evidence and we sustain this issue as to those two documents and will not consider them for purposes of the review of the trial court's decision to grant summary judgment.

## C. Limitations

 Appellees moved for summary judgment under Texas Rule of Civil Procedure 166a(c) (traditional summary judgment). Under a traditional summary

44. Documents submitted as summary judgment proof must be sworn to or certified unless they fall under the discovery documents exception. TEX. R. CIV. P. 166a(f), 166a(d). Exhibits one, two, four, five, and ten through fifteen were certified. Exhibits seven and nine were discovery documents in the same case and so did not need to be authenticated to serve as summary judgment proof. TEX. R. CIV. P. 166a(d); *McConathy v. McConathy,* 869 S.W.2d 341, 342 (Tex.1994); *but see Blanche v. First Nationwide Mortgage Corp.,* 74 S.W.3d 444 (Tex.App.—Dallas 2002, no pet. h.)(holding that *McConathy* rationale was limited to depositions).

45. While appellant's response to the motion for summary judgment objected to this evidence, there is no indication in the record that appellant sought a ruling on these objections. Failure to obtain written rulings on objections to the form of summary judgment evidence waives the issue, unless the record reflects an implicit ruling by the trial court. *Jones v. Ray Ins. Agency,* 59 S.W.3d 739, 752–53 (Tex.App.—Corpus Christi 2001, pet. filed). The mere grant of a motion for summary judgment is not an implicit ruling on objections outside of a specific motion in the record indicating that there was a ruling. *Id.* In the present case, the ruling on the motion for summary judgment does present an implied ruling as the court states, "Upon consideration of the Motion, the Response, and the evidence and public records on file, the Court is of the opinion to take judicial notice of and consider the records as Defendants request . . .". We read this as at least an implicit overruling of appellant's objections below. *See Frazier v. Khai Loong Yu,* 987 S.W.2d 607, 610 (Tex.App.—Fort Worth 1999, pet. denied).

judgment under Texas Rule of Civil Procedure 166a(c), the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Id.* Every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant. *Id.* Evidence favoring the movant's position will not be considered unless it is uncontradicted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). In the case of an affirmative defense, such as limitations, the movant must establish all the elements of an affirmative defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

A defendant moving for summary judgment on the affirmative defense of limitations has the burden of conclusively establishing that defense. *Velsicol Chem. Corp. v. Winograd,* 956 S.W.2d 529, 530 (Tex.1997). If the plaintiff's pleadings do not affirmatively show that the limitations period has run, the movant has the burden of proving that the suit is barred by limitations as a matter of law. *Gibson v. John D. Campbell & Co.,* 624 S.W.2d 728, 731 (Tex.App.—Fort Worth 1981, no writ).

A cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990). In the case of a constructive trust, limitations begin running at the inception of the trust. *Powers v. McDaniel,* 785 S.W.2d 915, 918 (Tex.App.—San Antonio 1990, writ denied). To toll limitations in a constructive trust case, there must have been a fraudulent concealment of facts. *Id.*

Fraudulent concealment is based on the doctrine of equitable estoppel and estops a defendant from relying on the statute of limitations as an affirmative defense to a plaintiff's claim where the defendant fraudulently conceals the existence of a cause of action. *Borderlon v. Peck,* 661 S.W.2d 907, 908 (Tex.1983). This is because a defendant should not be permitted to avoid liability for his actions by concealing his wrongdoing until limitations have run. *S.V. v. R.V.,* 933 S.W.2d 1, 6 (Tex. 1996). Accordingly, the doctrine of fraudulent concealment cannot apply where the defendant himself does not have knowledge of the facts supposedly concealed. *HTM Rests., Inc. v. Goldman, Sachs & Co.,* 797 S.W.2d 326, 329 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Raney v. Mack,* 504 S.W.2d 527, 534 (Tex.Civ. App.—Texarkana 1973, no writ).

Appellant did not plead fraudulent concealment and under the facts presented in her petition, such doctrine is not availing as she does not allege any facts which indicate that appellees concealed any wrongdoing on their part which would give rise to a cause of action. The only wrongful conduct alleged by appellant is on the part of the state investigators and prosecutors who were not defendants in this suit. Hence the accrual of appellant's claim for constructive trust was not deferred by any tolling rule.[46] The statute of limitations

---

**46.** Appellant likewise did not plead the discovery rule in reference to her constructive trust claim nor do we find it to be applicable to her constructive trust claim. *See Powers v.* *McDaniel,* 785 S.W.2d 915, 918 (Tex.App.—San Antonio 1990, writ denied)(limitations in a constructive trust case tolled only by a fraudulent concealment); *S.V. v. R.V.,* 933

thus began running on appellant's claim for constructive trust on the date the alleged trust came into being—May 7, 1991—the date of the summary judgment in the underlying suit. *Powers,* 785 S.W.2d at 918.

Since appellant did not file her constructive trust claim until 2000, we need not determine whether a four-year[47] or two-year[48] statute of limitations would apply. Appellant's claim for a constructive trust based on unjust enrichment was untimely and the trial court did not err in granting summary judgment as to that claim on the grounds of limitations.

### REMAINING ISSUES

As our dispositions of the first and fourth issues before us are dispositive, we do not reach the remaining issues. TEX. R. APP. P. 47.1.

### CONCLUSION

Having found that the trial court properly dismissed the bill of review claim under special exceptions for failure to state a claim and finding that the constructive trust claim was barred by limitations and summary judgment properly granted on that ground, we affirm the judgment of the trial court.

---

S.W.2d 1, 4–6 (Tex.1996)(discussing the differences between fraudulent concealment and the discovery rule).

**47.** *Carr v. Weiss,* 984 S.W.2d 753, 762 (Tex. App.—Amarillo 1999, pet. denied)(considering constructive trust claims to be under the same limitations as suits to enforce or arising out of a breach of trust).

**48.** *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 885 (Tex.1998)(unjust enrichment claims).