IN
THE

TENTH
COURT OF APPEALS

_______________

                       

                                       No.
10-02-00125-CV

 

        TOM
SONNICHSEN,

 

                                                                             Appellant

        v.

 

        BAYLOR UNIVERSITY, 

 

                                                                             Appellee

 

_____________________

                           

From the 170th District Court

McLennan County, Texas

Trial Court No. 97-4214-4

 



MEMORANDUM Opinion



 

            Tom Sonnichsen sued Baylor University after Baylor terminated his employment as its
women’s volleyball coach.  He alleged
breach of contract and fraud.  The trial court
granted Baylor’s no-evidence summary judgment motion which challenged three
elements of Sonnichsen’s fraud claim. 
The court also sustained Baylor’s special exceptions as to Sonnichsen’s
contract claim and rendered a take-nothing judgment.  Sonnichsen contends that he produced
sufficient evidence to overcome the no-evidence summary judgment motion and
that the court abused its discretion by sustaining the special exceptions.  Because we agree, we will reverse and remand.

BACKGROUND[1]

          Baylor hired Sonnichsen as its women’s volleyball coach in
1989.  At that time, all Baylor coaches
other than the football coach and the men’s basketball coach had oral, one-year
contracts.  Then athletic director Bill
Menefee advised Sonnichsen that he “would be able to retire” at Baylor if he
ran a “clean” program and treated his players appropriately.  Menefee’s successor, Dr. Richard Ellis, made
similar representations, at least until Baylor decided to join the Big 12
athletic conference.

          When it was decided that Baylor would join the Big 12 in
1996, Dr. Ellis advised the coaches that it would be imperative for them to
strengthen and develop their programs to be competitive in the new conference
and that winning would be important. 
Sonnichsen determined to strengthen the volleyball program by scheduling
tougher opponents.  As a result, the
win-loss record for the program suffered in 1994 and 1995.

          Sonnichsen discussed his plan with Dr. Ellis and Sonnichsens’s
immediate supervisor Jeanne Nowlin during his annual evaluation before the 1994
season and told them that the team’s win-loss record would suffer
significantly.  Neither Dr. Ellis nor
Nowlin expressed any concern about the win-loss record nor did either suggest
that Sonnichsen’s employment at Baylor may be jeopardized by a losing record.

          In May 1995, general counsel Basil Thomson advised the head
coaches (other than the head football and men’s basketball coaches) that they
would be receiving written two-year contracts as part of Baylor’s effort to
resolve a Title IX complaint regarding disparities between its men’s and
women’s athletic programs.[2]  That fall, Thomson told Sonnichsen that the
contracts were under review in the athletic department.

          During this period, Baylor was also experiencing a
transition from the administration of its president when Sonnichsen was hired,
Dr. Herbert H. Reynolds, to that of his successor, Dr. Robert B. Sloan,
Jr.  Sloan took office in June 1995.  Dr. Ellis anticipated that the contracts
discussed by Thomson would have to be approved by Dr. Sloan.

          In Sonnichsen’s annual written evaluation prepared in
August 1995, Nowlin identified supervision of the volleyball players and
“bolder recruiting practices” as “areas for improvement.”  Dr. Ellis agreed but characterized the 1994
season as “disappointing.”  Both rated
Sonnichsen’s overall performance as “above standards.”  Nowlin told Sonnichsen that the “contracts
were coming” when she gave him the written evaluation.  Nowlin told Sonnichsen on November 13 (at or
near the end of the volleyball season) that the contracts were being revised.

          Nowlin and Ellis discussed Sonnichsen’s continued
employment in light of the difficulties of the 1995 season at various times
during the season.  Nowlin recommended to
Dr. Sloan on or before December 13 that Sonnichsen’s employment be
terminated.  Ellis counseled against this
course of action and recommended that Sonnichsen be given one more year.

          At some point, Baylor determined to give its coaches
one-year contracts.  Dr. Sloan and Dr.
Ellis signed the finalized contracts in December 1995.  These contracts had a term running from June 1, 1995 through May 31, 1996.  The
contracts were delivered to the coaches in January 1996.  Because Sonnichsen’s employment was
terminated in December, his contract was never delivered.

          Nowlin summoned Sonnichsen for a meeting on December
29.  She handed him a letter dated
December 28 advising him that he would not be granted a “new contract” for the
1996-1997 year but would be “paid in full through the end of [his] contract,
which [would] expire on May 31, 1996.” 
Nowlin later told Sonnichsen that his employment was terminated because
of his team’s losing records in 1994 and 1995.

PROCEDURAL
HISTORY

          Sonnichsen filed suit in December 1997 alleging fraud and
breach of contract.  Baylor sought a
summary judgment primarily on the ground that both claims were barred by the
statute of frauds.  Sonnichsen asserted
the counter-defense of promissory estoppel. 
The trial court granted summary judgment in Baylor’s favor, and Sonnichsen
appealed.  We affirmed the judgment as to
Sonnichsen’s contract claim, reversed it as to the fraud claim, and remanded
the case to the trial court for further proceedings.  Sonnichsen
v. Baylor Univ., 47 S.W.3d 122, 127 (Tex. App.—Waco 2001, no pet.).

          On remand, Baylor filed a no-evidence summary judgment
motion challenging three elements of Sonnichsen’s fraud claim.  Sonnichsen filed a response to the summary
judgment motion with supporting evidence and simultaneously filed an amended
petition adding a claim for breach of his “contract of employment,” including
his “contract rights created by [Baylor’s] representations and [by] the terms
of the 1995-96 written contract” which was never delivered to him.

          Baylor responded to the amended petition with an amended
answer and special exceptions.  Baylor
specially excepted to the amended contract claim on the grounds that it “is a
violation of the doctrines of the law of the case, estoppel, and res judicata.”  The trial court granted the summary judgment
motion, sustained the special exceptions, and rendered a take-nothing judgment.

          Because Sonnichsen presented some evidence to support the
challenged elements of his fraud claim and because the court abused its
discretion by sustaining the special exceptions, we will reverse and remand.

SONNICHSEN PRESENTED SOME EVIDENCE
TO SUPPORT

THE CHALLENGED ELEMENTS OF HIS
FRAUD CLAIM

 

Sonnichsen
contends in his first issue that the trial court erred by granting Baylor’s
no-evidence summary judgment motion because he presented some evidence that:
(1) Baylor representatives made false representations with knowledge of their
falsity or made them recklessly without any knowledge of the truth; (2) the
representations were made with the intent that they be acted upon; and (3) Sonnichsen
suffered compensable damages because of his reliance on the representations.

          Baylor contends that the only potentially actionable
representation alleged is Thomson’s statement that each head coach would
receive a written employment contract with a two-year term.  Undoubtedly, this is the primary allegation,
but it is not the only one.  In fact, Sonnichsen
identified eight alleged representations in his summary judgment response: (1)
former athletic director Menefee told him that he could retire at Baylor so
long as he ran a clean program and treated his players appropriately; (2) Dr.
Ellis initially made similar representations; (3) Dr. Ellis announced that
winning was important with Baylor’s entry into the Big 12 and that coaches
needed to take the necessary steps to ensure that their teams were competitive;
(4) Thomson told the coaches that head coaches in sports other than football
and men’s basketball would receive written employment contracts with two-year
terms; (5) Thomson told Sonnichsen in the fall of 1995 that the written
contracts were being reviewed in the athletic department; (6) Nowlin told Sonnichsen
that fall that the “contracts were coming” and were still being revised; (7)
Dr. Ellis and Nowlin represented by their silence in 1994 that a losing record
in 1994 or 1995 would not be a ground for termination; and (8) Dr. Ellis
represented by his failure to cite the 1994 win-loss record as an area needing
improvement that a losing record in 1995 would not be a ground for termination.[3]  We will review the summary judgment in light
of more than just the primary Thomson representation.  See
e.g. Ho v. Univ. of Tex. at Arlington, 984 S.W.2d 672, 690-93 (Tex.
App.—Amarillo 1998, pet. denied) (reversing summary judgment on 10 of 32
fraudulent representations and omissions committed by university personnel).

Knowledge Of Falsity

Baylor
contends that Sonnichsen can produce no evidence that Thomson knew his
statement about written, two-year contracts was false or that he made it
recklessly without any knowledge of its truth. 
Sonnichsen responds that Thomson knew the statement was false or
recklessly made the statement without knowledge of its truth because it was
known at that time that Dr. Sloan would have to approve the contracts.

Sonnichsen
produced Dr. Ellis’s deposition testimony to support this assertion.  Dr. Ellis described the process by which
Thomson and he worked closely with a Baylor vice-president in the Reynolds
administration to develop the contracts Thomson told the coaches about.  Dr. Ellis assumed that this vice-president
and/or Dr. Sloan would have to approve the final version of the contracts.  Viewed in a light most favorable to
Sonnichsen, it can be inferred from this evidence that Thomson (because of his
close working relationship with the vice-president and Dr. Ellis on the
contracts) was at least reckless about whether Dr. Sloan would approve the final
version of the contracts.

Nowlin told
Sonnichsen during his August 1995 performance evaluation that the “contracts
were coming.”  Thomson told Sonnichsen
that fall that the contracts were under review. 
And during a meeting on November 13, Nowlin told him “that she had been
talking about the ‘contracts’ that were being revised or rewritten.”

Nowlin
and Ellis discussed Sonnichsen’s continued employment in light of the
difficulties of the 1995 season at various times during the season.  Nowlin recommended to Dr. Sloan on or before
December 13 that Sonnichsen’s employment be terminated.  Ellis counseled against this course of action
and recommended that Sonnichsen be given one more year.

To
summarize, Nowlin told Sonnichsen that his contract was being “revised” at the
same time or perhaps after his continued employment was under review.  No more than thirty days later, she
recommended that his employment be terminated. 
Given the evidence of Nowlin’s and Dr. Ellis’s prior statements,
Thomson’s prior statements, and Nowlin’s status as his immediate supervisor,
Nowlin’s statement that his contract was being revised and her failure to even
suggest that his continued employment was under review collectively constitute
some probative evidence of an actionable misrepresentation.  See
Bradford v. Vento, 48 S.W.2d 749, 755 (Tex. 2001) (failure to disclose can be actionable
when there is a duty to speak); Columbia/HCA
Healthcare Corp. v. Cottey, 72 S.W.3d 735, 744 (Tex. App.—Waco 2002, no
pet.); Lesikar v. Rappeport, 33
S.W.3d 282, 299 (Tex. App.—Texarkana 2000, pet. denied).

Collectively,
this evidence supports an inference that Thomson was reckless about whether Dr.
Sloan would approve the final version of the contracts and that Nowlin knew
Sonnichsen’s continued employment was in jeopardy and that he would not receive
a contract or was reckless about the truth of her statement that his contract was
being “revised” and the underlying implication that his employment at Baylor
would continue.

Intent

          Baylor contends that Sonnichsen can produce no evidence
that Thomson (or any Baylor representative) intended for Sonnichsen to rely on
their representations.  Sonnichsen
responds that intent can be inferred from Baylor’s denial that Thomson
“promised” written, two-year contracts and from the fact that Sonnichsen did
not receive a written contract.

Intent
may be inferred from subsequent acts.  Spoljaric v. Percival Tours, Inc., 708
S.W.2d 432, 434 (Tex. 1986); IKON
Office Solutions, Inc. v. Eifert, 125 S.W.3d 113, 124 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); Batto v. Gafford, 119 S.W.3d 346, 348
(Tex. App.—Waco 2003, no pet.).  Although
failure to perform a promise standing alone is not evidence of fraudulent
intent, it is a circumstance to be considered with other evidence of such
intent.  Id.

“‘Slight
circumstantial evidence’ of fraud, when considered with the breach of promise
to perform, is sufficient to support a finding of fraudulent intent.”  Spoljaric,
708 S.W.2d at 435; Batto, 119 S.W.3d
at 348; Oakwood Mobile Homes, Inc. v.
Cabler, 73 S.W.3d 363, 372 (Tex. App.—El Paso 2002, pet. denied).  A party’s denial that it made the promise or
representation at issue is another factor showing fraudulent intent.  See
T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 222 (Tex. 1992); Beal
Bank, S.S.B. v. Schleider, 124 S.W.3d 640, 649 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); Batto, 119 S.W.3d at 348.

Thompson
represented that Sonnichsen would receive a written, two-year contract.  Nowlin represented that this contract was
being prepared as late as November 13, 1995.  Baylor
denies that it ever told the coaches they would in fact receive written,
two-year contracts.  Baylor prepared and
signed a written, one-year contract for Sonnichsen but never delivered it to
him.  The actions Baylor’s
representatives took after Thomson’s statement, specifically during the course
of the 1995 volleyball season and immediately thereafter, collectively
constitute some probative evidence of fraudulent intent.

DAMAGES

Baylor
contends that Sonnichsen can produce no evidence of compensable damages.  Sonnichsen responds that he has suffered the
following compensable damages: (1) inability to obtain employment for the
1996-97 season; (2) lost opportunity to advance his career and increase his
earning capacity; (3) loss of revenues from a Nike contract; (4) lost revenues
from his 1996 summer volleyball camps; and (5) loss of tuition benefits by
which he could complete his master’s degree at Baylor’s expense.

          Baylor contends that Sonnichsen cannot rely on lost
revenues from the Nike contract on appeal because he did not include them in
the list of damages he itemized in his response to Baylor’s summary judgment
motion.  We need not address this
particular contention because Sonnichsen alleged other damages in the response
sufficient to defeat Baylor’s motion.

          A prevailing plaintiff may generally recover actual (or
direct) damages and consequential (or special) damages for a common law fraud
claim.  Formosa Plastics Corp. USA v.
Presidio Engrs. & Contractors, Inc., 960 S.W.2d 41, 49 & n.1 (Tex. 1998); Rivas
v. Cantu, 37 S.W.3d 101, 118 (Tex. App.—Corpus Christi 2000, pet.
denied).  There are two measures for
actual damages: (1) out-of-pocket; and (2) benefit-of-the-bargain.  Id.  When a
common law fraud claim is based on an oral promise to execute a written
contract which is never executed, the statute of frauds bars the plaintiff from
recovering damages for the benefit of the bargain.  Haase
v. Glazner, 62 S.W.3d 795, 799 (Tex. 2001).

          Special damages must be specifically pleaded and
proved.  Tex. R. Civ. P. 56; Formosa
Plastics Corp., 960 S.W.2d at 49 n.1; Rivas,
37 S.W.3d at 118.  Lost earnings or
profits are a form of special damages when they are not earnings or profits
which would have been received as a direct result of the fraudulent
representation.  See Rivas, 37 S.W.3d at 118; Koko
Motel, Inc. v. Mayo, 91 S.W.3d 41, 51-52 (Tex. App.—Amarillo 2002, pet.
denied); Weingartens, Inc. v. Price,
461 S.W.2d 260, 264 (Tex. Civ. App.—Houston [14th Dist.] 1970, writ ref’d
n.r.e.); but cf. Foley v. Parlier, 68
S.W.3d 870, 884 (Tex. App.—Fort Worth 2002, no pet.) (characterizing loss of
income as out-of-pocket damages).

          Sonnichsen’s loss of revenues from the 1996 volleyball
camps are special damages.  See Rivas, 37 S.W.3d at 118; Koko Motel, 91 S.W.3d at 51-52; Weingartens, 461 S.W.2d at 264.  However, he did not plead these lost revenues
or any other special damages in his amended petition.  Cf. Tex. R. Civ. P. 56; Formosa
Plastics Corp., 960 S.W.2d at 49 n.1; Rivas,
37 S.W.3d at 118.  Nevertheless, Baylor
did not complain in the trial court and does not contend on appeal that he has
failed to properly plead special damages. 
Cf. Saucedo v. Rheem Mfg. Co.,
974 S.W.2d 117, 119 (Tex. App.—San Antonio 1998, pet. denied); Boat Superstore, Inc. v. Haner, 877
S.W.2d 376, 379 (Tex. App.—Houston [1st Dist.] 1994, no writ); Weingartens, 461 S.W.2d at 262.  Because this is a summary judgment appeal and
not an appeal following a trial on the merits, we hold that Sonnichsen’s
failure to plead special damages at this juncture is not fatal.

Sonnichsen
presented evidence that he lost revenues from his 1996 volleyball camps because
of Baylor’s misrepresentation.  These are
special damages which may be awarded to a prevailing plaintiff in a common law
fraud case.  Accordingly, Sonnichsen
presented some evidence of compensable damages.

          Thus, we sustain Sonnichsen’s first issue.

THE TRIAL COURT ABUSED ITS
DISCRETION

BY
SUSTAINING BAYLOR’S SPECIAL EXCEPTIONS

Sonnichsen
contends in his second issue that the trial court erred by sustaining Baylor’s
special exception challenging Sonnichsen’s contract claim without first giving
him an opportunity to amend his pleadings. 
Resolution of this issue depends in large part on whether we expressly
limited the scope of remand when we reversed and remanded the case in
Sonnichsen’s first appeal.

          When an appellate court remands a cause to the trial court,
the case is reopened in its entirety unless the appellate court’s decision
specifically limits the scope of remand to a particular issue or issues.  Graham
Sav. & Loan Assn. v. Blair, 986 S.W.2d 727, 729 (Tex. App.—Eastland
1999, no pet.); Univ. of Tex. Sys.
v. Harry, 948 S.W.2d 481, 483
(Tex. App.—El Paso 1997, no pet.).  For
the scope of remand to be limited, the appellate court’s intent must “clearly
appear from the decision.”  Garcia v. Martinez, 988 S.W.2d 219, 221 (Tex. 1999).  Thus,
the Supreme Court found in Garcia
that the court of appeals clearly intended that the trial on remand be limited
when it remanded the case “as to the issue of the Guardian Ad Litem’s fee for
an evidentiary hearing.”  Id.

          In Sonnichsen’s first appeal, we affirmed the judgment as
to the contract claim Sonnichsen alleged in his first amended petition.  We reversed as to Sonnichsen’s fraud claim,
severed the fraud claim from that contract claim, and remanded this cause to
the trial court for further proceedings. 
Sonnichsen, 47 S.W.3d at 127.  Our prior decision did not limit the scope of
the remand.  Cf. Garcia, 988 S.W.2d at 221. 
Thus, Sonnichsen could amend his pleadings on remand to assert other
claims.[4]  Cf.
Walston v. Walston, 119 S.W.3d 435, 437 (Tex. App.—Waco 2003, no pet.) (petitioner amended
petition on remand to allege new partition claim).

Sonnichsen
alleged in his first amended petition that Baylor breached a written, two-year
employment contract which Baylor never executed.  He further alleged the counter-defense of
promissory estoppel in response to Baylor’s contention that his contract claim
was barred by the statute of frauds.  We
held on appeal that promissory estoppel did not apply because Sonnichsen failed
to raise a fact issue regarding whether the contemplated written contract was
in existence at the time Thomson represented that the coaches would receive
such contracts.  Sonnichsen, 47 S.W.3d at 126-27.

On
remand, Sonnichsen amended his petition to allege that Baylor breached his
“contract rights created by its representations and [by] the terms of the
1995-96 written contract” which it never delivered.  Sonnichsen characterizes this allegation on
appeal as a claim that Baylor breached “his one-year oral contract and/or . . .
his one-year written contract.”[5]  This is a different claim than that alleged
in Sonnichsen’s first amended petition. 
Without passing on the merits of this claim, we hold that it was proper
for Sonnichsen to amend his pleadings to assert the claim.

A trial
court may dismiss a case upon sustaining a defendant’s special exceptions
without giving the plaintiff an opportunity to amend his pleadings if the
plaintiff’s allegations are incurably defective.  Mowbray
v. Avery, 76 S.W.3d 663, 677-78 (Tex. App.—Corpus Christi 2002, pet.
denied); Zaremba v. Cliburn, 949
S.W.2d 822, 828-29 (Tex. App.—Fort Worth 1997, pet. denied).  Baylor contends that Sonnichsen’s contract
claim suffers the following incurable defects: (1) it is barred by limitations;
(2) Sonnichsen affirmatively pleaded that Baylor never delivered the written
contract to him; (3) it is barred by the law-of-the-case doctrine; and (4) it
is barred by res judicata.

          When we review a contention that the trial court erred by
dismissing a case upon sustaining special exceptions without giving opportunity
to amend, we conduct a two-step analysis. 
See Mowbray, 76 S.W.3d at
678.  First, we examine whether the court
abused its discretion by sustaining the special exceptions.  If not, then we determine whether dismissal
was proper.  Id.

          Baylor did not allege in its special exceptions that
Sonnichsen’s contract claim is barred by limitations.  Accordingly, we do not consider that argument
on appeal.  See Tex. R. App. P.  33.1(a)(1).

          Baylor contends that Sonnichsen cannot prevail on his
contract claim because he has affirmatively pleaded that Baylor never delivered
the written, one-year contract to him. 
Delivery is a requisite to the existence of a valid, enforceable
contract.  Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist., 127 S.W.3d 235,
245 (Tex. App.—Waco 2003, no pet.); New Caney Indep. Sch. Dist. v. Burnham AutoCountry, Inc., 30 S.W.3d
534, 537 (Tex. App.—Texarkana 2000, pet. denied).  However, Sonnichsen’s contract claim is not
premised solely on the undelivered written contract.  Rather, it is also based on the oral,
one-year contracts which Baylor provided its coaches before it began offering
written contracts for the 1995-96 year. 
Accordingly, lack of delivery of the written contract is not fatal to
Sonnichsen’s contract claim.

          Baylor contends that Sonnichsen’s contract claim is barred
by the law-of-the-case doctrine. 
However, “the law-of-the-case doctrine has limited application following
a summary judgment appeal.”  Ash v. Hack Branch Distribg. Co., 54 S.W.3d 401, 409 n.3 (Tex. App.—Waco 2001,
pet. denied) (citing Hudson v. Wakefield,
711 S.W.2d 628, 630-31 (Tex.
1986)).  This is so because on remand the
parties may be different or the parties may amend their pleadings to allege other
theories of recovery.  See Hudson, 711 S.W.2d at 630-31; Ash, 54 S.W.3d at 409 n.3.  This is precisely what has occurred in
Sonnichsen’s case.

          Baylor contends that Sonnichsen’s contract claim is barred
by res judicata.  Res judicata “bars the
parties and their privies from bringing a second suit ‘not only on matters
actually litigated, but also on causes of action or defenses which arise out of
the same subject matter and which might have been litigated in the first
suit.’”  Compania Financiara Libano, S.A. v. Simmons, 53 S.W.3d 365, 367 (Tex. 2001) (quoting Barr v. Res. Trust Corp., 837 S.W.3d 627, 630 (Tex. 1992)). 
Sonnichsen’s “first suit” has not yet been finally adjudicated.  Accordingly, res judicata does not bar his
amended contract claim.  See Creative Thinking Sources, Inc. v.
Creative Thinking, Inc., 74 S.W.3d 504, 512 (Tex. App.—Corpus Christi 2002, no pet.).

          None of the grounds asserted in Baylor’s special exceptions
support the court’s decision to sustain them. 
Thus, the court abused its discretion by sustaining the special
exceptions.

          Baylor contends in the alternative that this error did not
result in rendition of an improper judgment because Sonnichsen cannot amend his
contract claim to avoid limitations and the other challenges asserted.  See
Tex. R. App. P. 44.1(a)(1).  However, Sonnichsen’s amended contract claim
survives a limitations challenge under the relation-back doctrine because he
timely-filed suit and his amended contract claim arises from the same
transaction or occurrence as his original contract claim.  See
Tex. Civ. Prac. & Rem. Code Ann.§
16.068 (Vernon 1997); Barnett
v. Coppell N. Tex. Ct., Ltd., 123 S.W.3d 804, 821 (Tex. App.—Dallas 2003,
pet. denied).

          We have already explained why Baylor’s other challenges
fail.  Accordingly, we sustain
Sonnichsen’s second issue

We
reverse the judgment and remand this cause to the trial court for further
proceedings consistent with this opinion.

 

FELIPE REYNA

Justice

Before Chief Justice Gray,

Justice Vance, and

Justice Reyna

(Chief Justice Gray dissenting)

Reversed and remanded

Opinion delivered and filed August
 25, 2004

[CV06]











[1]
          Consistent
with the applicable standard of review, we present the background facts in the
light most favorable to Sonnichsen.  See Turner v. KTRK TV, Inc., 38 S.W.3d 103,
109 (Tex. 2000); see
also Forbes, Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167, 172 (Tex. 2003) (appellate court views record in light
most favorable to nonmovant when reviewing no-evidence summary judgment
motion).





[2]
          One
of the specific disparities noted was that no coach in a women’s athletic
program had a written contract.





[3]
          Sonnichsen
actually contends in his summary judgment response that Ellis and Nowlin
“represented by their silence that losing seasons in 1994 and 1995 would not be
grounds for concern about continued employment.”





[4]
          In
fact, Baylor’s special exception characterizes Sonnichsen’s contract claim in
his second amended petition as “a different breach of contract claim.”

 





[5]
          When
a defendant contends that the plaintiff’s petition does not state a valid cause
of action, we view the allegations and inferences arising from them in the
light most favorable to the plaintiff.  Mowbray v. Avery, 76 S.W.3d 663, 678
(Tex. App.—Corpus Christi 2002, pet. denied); accord Perry v. S.N., 973 S.W.2d 301, 303 (Tex. 1998).