

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00511-CV

———————————————————

GARRICK D. BROWN, Appellant

V.

MATHEW ROBERT STONE, Appellee

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-307887-19

Before Sudderth, C.J.; Birdwell and Walker, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

This case involves a dispute concerning title to real property and the validity of certain easements. The dispute arose when Appellant Garrick D. Brown constructed a fence around a strip of land across which Appellee Mathew Robert Stone claimed an easement (the Alleged Easement). Stone sued Brown, seeking both equitable relief—an order requiring Brown to take down the fence—and damages. As the litigation progressed, Stone's claims evolved such that he eventually sought enforcement of various other easements and a declaratory judgment establishing his co-ownership of the Alleged Easement land. Brown asserted various affirmative defenses and counterclaims based on his argument that the easements were invalid because, among other things, they had been extinguished by merger.

The trial court dismissed all of Brown's counterclaims through summary judgment and special exceptions. The trial court also granted Stone summary judgment on his title and easement claims. A jury trial was held on Stone's remaining claims, including nuisance. The jury found in Stone's favor on his nuisance claim and awarded him $6,000 in economic damages plus an additional $250,000 for mental anguish. The trial court signed a final judgment based on the jury's verdict and its prior summary-judgment rulings. In addition to damages, the final judgment granted Stone a permanent injunction granting him full access to the Alleged Easement and

prohibiting Brown from building any permanent structures that would obstruct Stone's use of the easement.[1]

On appeal, Brown argues, inter alia, that the trial court erred by granting Stone summary judgment on his title and easement claims. Specifically, he asserts that the trial court erred by concluding (1) that Stone and Brown were co-owners of the Alleged Easement land and (2) that the Alleged Easement had not been extinguished by merger. Because we agree that these conclusions were erroneous, we reverse the trial court's final judgment, summary judgment, and order granting Stone's special exception to Brown's first supplemental counterclaim; render judgment in Brown's favor on the merger issue; and remand the case for a new trial on the remaining issues.

## I. BACKGROUND

When this case began, Brown and Stone owned adjacent tracts of land just south of Eagle Mountain Lake in Tarrant County. Brown owned two northern lots that border the lake (collectively, the North Lots) and the Alleged Easement land—a strip of land that extends from the North Lots south to Wells Burnett Road. Stone owned two lots that border the Alleged Easement land to the east (collectively, the East Lots), and Bobby Ray and Jennifer Tiner owned a lot that borders the Alleged

---

[1]The permanent injunction also granted Stone access to—and prohibited Brown from obstructing—various other disputed easements, including the so-called "L-Shaped Easement."

Easement land to the west (the West Lot).[2] The relative locations of the various lots are reflected on the following not-to-scale map:



Stone moved into his house in mid-2018, and not long thereafter, he hosted a party. At around 2:00 a.m., several of his guests walked straight north between

---

[2]The Tiners intervened in the case and sought relief similar to that requested by Stone, but they settled their claims before trial and are not parties to this appeal.

Brown's lots to a boat dock. There, the family that was renting the homes on Brown's lots told Stone's guests that they did not have the right to access the boat dock, and a verbal altercation ensued.

Stone claimed that before he purchased his property, the seller, Dwayne Herring, had told him that when he bought the East Lots, he would have the right to access the boat dock by walking through Brown's properties. But Brown denied that Stone had any such right of access.

After the above-described altercation, Brown decided to build a fence along the Alleged Easement land to secure his property and protect his tenants. In early April 2019, Brown sent Stone a letter notifying him that he planned to build a fence around the Alleged Easement land in thirty days. On April 26, 2019, Stone's attorney mailed Brown a letter (to which he attached numerous recorded instruments) stating that Brown was prohibited from building the proposed fence because it would interfere with Stone's access to the Alleged Easement.

Brown testified that he did not receive the letter from Stone's counsel within the thirty-day notice period and that he did not believe that Stone had a valid easement. Thus, on May 4, 2019, Brown proceeded to build the fence.

On May 10, 2019, Stone obtained an ex parte temporary restraining order (TRO) directing Brown to remove the fence. Shortly before the temporary-injunction

hearing, the parties agreed to the entry of a temporary injunction that allowed the fence to remain in place pending the litigation's outcome.[3]

In October 2019, Brown filed a traditional and no-evidence summary-judgment motion in which he argued that the easements that Stone sought to enforce—including the Alleged Easement—had been extinguished by merger when a previous owner had acquired every dominant and servient estate. Specifically, Brown noted that Pamela Smallwood had come to own all of the relevant lots—the North Lots (including the Alleged Easement land), West Lot, and East Lots—in 1997. Brown argued that under the merger doctrine, Smallwood's acquisition of all the lots extinguished any easements between or among them. He also pointed out that the North and East Lots had been united under a single owner a second time in 2006 when Craig Bordlemay acquired them from Smallwood.

In January 2020, Stone filed a competing summary-judgment motion. He argued that even though Smallwood and Bordlemay had acquired all of the lots, the easements had not been extinguished by the merger doctrine. According to Stone, because both Smallwood and Bordlemay had taken the lots subject to vendor's liens—meaning that they held only equitable, not legal, title to the properties—there was never unity of title as to all of the lots, and thus the easements had never been merged.

---

[3]The agreed temporary-injunction order provided that Stone and the Tiners could each remove—without damaging—a single fence panel and post closest to Wells Burnett Road.

As the litigation progressed and the properties were surveyed, Stone discovered that his deed description included the Alleged Easement land. Stone's title claim to this land is based on events that occurred when Bordlemay purchased the North and East Lots from Smallwood. Bordlemay financed his purchase of North Lot 6576 through Washington Mutual Bank and financed his purchase of the East Lots through Accredited Home Lenders, Inc. On August 11, 2006, Bordlemay signed a deed of trust pledging North Lot 6576 (including the Alleged Easement land) to Washington Mutual; this deed of trust was recorded on August 28, 2006. On August 15, 2006, Bordlemay signed a deed of trust pledging the East Lots and the Alleged Easement land to Accredited; this deed of trust was recorded on August 29, 2006. Both Washington Mutual's and Accredited's deeds of trust provided that their respective purchase-money loans were secured not only by a deed-of-trust lien but also by a vendor's lien assigned by the seller, Smallwood.[4]

Bordlemay ultimately defaulted on both loans and each bank's assignee foreclosed its respective liens. The Washington Mutual deed of trust was foreclosed on August 7, 2007. The Accredited deed of trust was foreclosed nearly two years later on April 7, 2009.

In his summary-judgment motion, Stone argued that because Washington Mutual and Accredited had each been contemporaneously assigned a vendor's lien in

---

[4]The warranty deeds conveying the lots to Bordlemay likewise reflected that Smallwood had retained vendor's liens and that she had assigned them to the respective lenders.

the Alleged Easement land to secure its indebtedness and because the holder of a vendor's lien retains legal title to the property, the banks had each acquired an undivided one-half ownership interest in the Alleged Easement land. Because he had acquired his property from Herring, who, in turn, had acquired it from Accredited's successor-in-interest following the foreclosure of Accredited's deed of trust, Stone claimed that he was a co-owner of the Alleged Easement land, and he sought a summary declaratory judgment to that effect.

In August 2021, the trial court signed an order granting Stone's summary-judgment motion and denying Brown's summary-judgment motion. In the order, the trial court declared, among other things, that (1) no easements, including the Alleged Easement, had been extinguished by merger because both Smallwood and Bordlemay had taken the properties subject to vendor's liens and (2) Brown and Stone "are co-owners of separate, undivided interests" in the Alleged Easement land. Brown filed a motion to reconsider and modify the summary-judgment order, but the trial court denied it.

After the trial court ruled on the parties' summary-judgment motions, Brown filed a supplemental counterclaim alleging that the deeds upon which Stone relied to establish the Alleged Easement were defective because of a break in the chain of title. Stone specially excepted to Brown's supplemental counterclaim and asked the trial court to dismiss it on the grounds that it conflicted with the trial court's prior summary-judgment rulings. Ultimately, the trial court signed an order granting Stone's

special exceptions and dismissing Brown's counterclaim as moot in light of its summary-judgment order.

A jury trial was held on Stone's invasion-of-privacy and intentional-private-nuisance claims. Stone also sought mental-anguish damages based on the construction of the fence. After hearing the evidence, the jury found that Brown had intentionally created a private nuisance and awarded Stone $6,000 in economic damages and $250,000 in mental-anguish damages.

On November 29, 2022, the trial court signed a final judgment based on the jury's verdict and its prior summary-judgment rulings. Brown filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

## II. DISCUSSION

Although Brown raises seven issues, we need only address his first three, as they are dispositive of the appeal. *See* Tex. R. App. P. 47.1.

### A. The Trial Court Erred by Rendering a Summary Judgment Declaring that Brown and Stone Are Co-Owners of the Alleged Easement Land

In his first issue, Brown contends that the trial court erred by granting Stone a summary judgment declaring that Brown and Stone are co-owners of the Alleged Easement land. We agree.

#### 1. Standard of Review

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable

9

to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on its own cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). But to be entitled to summary judgment on a defendant's counterclaim, a plaintiff must conclusively negate at least one of the counterclaim's essential elements. *See EM Bldg. Contractors Servs., LLC v. Byrd Bldg. Servs., LLC*, No. 05-19-00153-CV, 2020 WL 4592791, at *3, *17 (Tex. App.—Dallas Aug. 11, 2020, no pet.) (mem. op.) (citing *Adams v. Tri-Cont'l Leasing Corp.*, 713 S.W.2d 152, 153 (Tex. App.—Dallas 1986, no writ)).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary-judgment evidence and determine all questions presented. *Fielding*, 289 S.W.3d at 848. We should then render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848.

**2. Analysis**

Stone's argument that he and Brown are co-owners of the Alleged Easement land is based on the flawed premise that Washington Mutual (through whom Brown claims title) and Accredited (through whom Stone claims title) became co-owners when they each took assignment of a vendor's lien covering this parcel. But this proposition—for which Stone cites no authority—runs counter to established principles governing liens and other interests in property.

One such principle is that "[i]n a contest over rights or interests in property, ordinarily the party that is first in time is first in right." *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 668 (Tex. App.—Fort Worth 1998, pet. denied) (citing *Church v. W. Fin. Corp.*, 22 S.W.2d 1074, 1075 (Tex. App.—San Antonio 1929, no writ)); *accord Williams v. Nationstar Mortg., LLC*, 349 S.W.3d 90, 93 (Tex. App.—Texarkana 2011, pet. denied). Thus, when two parties assert competing interests in property, the party whose instrument was recorded first will generally be considered the holder of the superior claim.[5] *See Anderson v. Barnwell*, 52 S.W.2d 96, 101 (Tex. App.—Texarkana 1932), *aff'd sub nom. Anderson v. Brawley*, 86 S.W.2d 41 (Tex. [Comm'n Op.] 1935); *see also Jackson v. Wildflower Prod. Co.*, 505 S.W.3d 80, 90–91 (Tex. App.—Amarillo 2016,

---

[5]There are exceptions to this general rule. For example, a subsequent lien may be superior to a prior one when (1) the liens are unequal in other respects, (2) the question of priority is governed by a contract between the parties or by statute, (3) the holder of the prior lien agrees to subordinate its lien to a subsequent interest, or (4) the prior lien is subordinated on equitable grounds. 2 James N. Johnson, *Texas Practice Guide: Real Estate Transactions* § 11:1 (2024–2025 ed.).

pet. denied) (discussing the legislature's enactment of the Texas recording system and its effect on the "first in time, first in right" rule). The general rule of first in time, first in right applies both to competing title claimants and to competing lienholders. *See World Help*, 977 S.W.2d at 668 (noting that "absent an exception to the general rule," appellant's vendor's and deed-of-trust liens would be superior to mechanic's liens because appellant's liens were "prior in time"); *see also Rosenthal v. Cent. City Corp.*, 234 S.W.2d 97, 98–99 (Tex. App.—Galveston 1950, writ ref'd n.r.e.) (affirming trial court's judgment vesting title to certain lots of land in appellee because appellee held a deed that had been executed and recorded before the deeds to the individuals through whom the appellant claimed title).

Here, the warranty deed giving rise to Washington Mutual's vendor's lien was dated August 11, 2006, and signed on August 15, 2006. The accompanying deed of trust was dated and signed on August 11, 2006. Both instruments were recorded on August 28, 2006. On the other hand, the warranty deed and accompanying deed of trust supporting Accredited's vendor's lien were dated and signed August 15, 2006, and were not recorded until August 29, 2006—one day after Washington Mutual's instruments were recorded. Thus, Washington Mutual's instruments were dated first and recorded first. Accordingly, unless an exception applies, Washington Mutual held the superior interest. *See World Help*, 977 S.W.2d at 668; *see also Jones v. Bank United of Tex., FSB*, 51 S.W.3d 341, 343–44 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)

12

(concluding that former spouse's vendor's lien was inferior to bank's prior deed-of-trust lien).

Invoking the "contemporaneous transfer rule," Stone asserts that the instruments supporting Washington Mutual's and Accredited's respective vendor's liens should be considered together and construed as one transaction. Further, he contends that because the holder of a vendor's lien retains legal title to the property, *see, e.g.*, *Flag-Redfern Oil Co. v. Humble Expl. Co.*, 744 S.W.2d 6, 8 (Tex. 1987), Smallwood's contemporaneous assignment of vendor's liens to Washington Mutual and Accredited, in effect, conferred to each of them an undivided one-half interest in the Alleged Easement land. But the record does not support Stone's argument.

Under the contemporaneous transfer rule, "[s]eparate instruments contemporaneously executed *as part of the same transaction* and relating to the same subject matter may be construed together as a single instrument." *Rudes v. Field*, 204 S.W.2d 5, 7 (Tex. 1947) (emphasis added). But there is nothing in the record to suggest that the instruments underlying Washington Mutual's and Accredited's vendor's liens were executed as part of the same transaction. To support his contention that the contemporaneous transfer rule applies, Stone points to the fact that the warranty deeds were executed on the same day, but he ignores the fact that the instruments underlying Washington Mutual's vendor's lien were dated four days before—and recorded one day before—those supporting Accredited's vendor's lien. These differing dates militate against the conclusion that the instruments were

13

executed as part of the same transaction. Indeed, they undermine Stone's argument that the transfers were contemporaneous. *Cf. Gen. Elec. Cap. Corp. v. ICO, Inc.*, 230 S.W.3d 702, 713 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (Frost, J., concurring) (noting that appellee had testified that he had entered into final severance agreement "contemporaneous[ly] with the termination of his employment, not the following day"); *Russell v. City of Fort Worth*, No. 2-05-191-CV, 2006 WL 1351485, at *6 (Tex. App.—Fort Worth May 18, 2006, pet. denied) ("Having occurred the day after the employee completed his misconduct, the second hiker's injuries would not be 'contemporaneous' with the misconduct . . . ." (quoting *City of Lubbock v. Rule*, 68 S.W.3d 853, 860 n.7 (Tex. App.—Amarillo 2002, no pet.))).

The cases Stone cites for the proposition that contemporaneously executed instruments may be considered together and construed as one transaction involved actual contemporaneous transactions that furthered a broader agreement between the executing parties.[6] *See Terrell v. Graham*, 576 S.W.2d 610, 611–12 (Tex. 1979); *Rudes*, 204 S.W.2d at 7; *Hendes v. Gale*, 376 S.W.2d 922, 923 (Tex. App.—San Antonio 1964, writ ref'd n.r.e.). For example, *Terrell* "involve[d] the construction of reciprocal instruments executed simultaneously by two brothers" who each owned a one-half

---

[6]In one of the cases Stone cited for this proposition, the Texas Supreme Court concluded that the contemporaneous transfer rule did not apply. *See Miles v. Martin*, 321 S.W.2d 62, 65–66 (Tex. 1959) (rejecting argument that deed of trust and warranty deed should be construed together as part of the same transaction for purposes of ascertaining the intention of the parties regarding the conveyance of mineral interests because "[t]here [wa]s nothing in the . . . record to suggest that [appellee] participated in the preparation of the deed of trust or knew any of its terms").

interest in the same land, and "[b]oth parties acknowledge[d] that the two instruments should be considered together and construed as one transaction." 576 S.W.2d at 611. Similarly, in *Rudes*, the relevant parties entered into a written agreement that explicitly incorporated a warranty deed signed the same day. 204 S.W.2d at 6–7. And in *Hendes*, the parties, who were co-tenants in property that they had inherited, executed reciprocal deeds four minutes apart and recorded both of them at 3:06 p.m. the same day. 376 S.W.2d at 923.

Thus, the cases relied upon by Stone involved facts very different from those presented here. In the instant case, the instruments in question were not reciprocal, nor did they expressly reference or incorporate one another. Indeed, nothing in the record suggests that the instruments' signatories intended them to be treated as part of the same transaction. *See Terrell*, 576 S.W.2d at 612 (noting that "in construing . . . instruments, the primary inquiry of the court is directed to ascertaining the intent of the grantor"). Accordingly, we conclude that the contemporaneous transfer rule does not apply.

Therefore, Washington Mutual—as the party whose instruments were dated and recorded first—held the superior interest in the Alleged Easement land. *See World Help*, 977 S.W.2d at 668; *see also Jones*, 51 S.W.3d at 343–44. Further, because Washington Mutual's instruments were first in time, even if we were to assume that Smallwood purported to convey her retained legal title when she assigned her

15

vendor's liens,[7] legal title to the Alleged Easement land would be vested solely in Washington Mutual, not split equally between Washington Mutual and Accredited. *See Rosenthal*, 234 S.W.2d at 98–99; *Anderson*, 52 S.W.2d at 101. Thus, the only interest in the Alleged Easement land that Accredited received by its assignment was a junior vendor's lien. And as a junior lien, it was extinguished when Washington Mutual's successor-in-interest foreclosed its senior lien in August 2007. *See Conseco Fin. Servicing Corp. v. J&J Mobile Homes, Inc.*, 120 S.W.3d 878, 883 (Tex. App.—Fort Worth 2003, pet. denied) ("Following the valid foreclosure of a senior lien, junior liens, if not satisfied from the proceeds of sale, are extinguished."); *see also Jones*, 51 S.W.3d at 344 (holding that vendor's lien had been extinguished by foreclosure of senior lien). Consequently, Accredited's successor-in-interest was not vested with title to any interest in the Alleged Easement land when it foreclosed its lien in April 2009 and could not have transferred any such interest to Herring, the party through whom Stone claims title. *See Law v. State*, 811 S.W.2d 265, 267 (Tex. App.—Houston [1st

---

[7]When a property seller assigns its retained vendor's lien to a third party, the assignee does not, by the mere fact of such assignment, take legal title to the property. *See Farmers' Loan & Tr. Co. v. Beckley*, 54 S.W. 1027, 1029 (Tex. 1900); *R.B. Godley Lumber Co. v. Slaughter*, 171 S.W. 779, 781 (Tex. App.—Texarkana 1914, no writ); *Hatton v. Bodan Lumber Co.*, 123 S.W. 163, 166 (Tex. App.—Texarkana 1909, writ ref'd). Rather, when a vendor assigns a vendor's lien without expressly transferring legal title to the assignee, the vendor retains legal title to the property and "holds [it] in trust for the assignee as well as his vendee." *Farmers' Loan & Tr. Co.*, 54 S.W. at 1029. Because the warranty deeds underlying both Washington Mutual's and Accredited's property interests recite that Smallwood conveyed not only her vendor's lien but also "superior title" to the lenders and because the parties did not address this issue in their briefing, we assume—without deciding—that Smallwood purported to convey her retained legal title to the lenders.

16

Dist.] 1991, no pet.) ("It is axiomatic that a grantor cannot convey to a grantee a greater or better title than he holds."); *Extraction Res., Inc. v. Freeman*, 555 S.W.2d 156, 159 (Tex. App.—El Paso 1977, writ ref'd n.r.e.) ("It is elementary that one cannot convey what he does not own.").

Thus, the trial court erred by rendering a summary judgment declaring that Stone was a co-owner of an undivided interest in the Alleged Easement land. Accordingly, we sustain Brown's first issue.

## B. Brown's First Supplemental Counterclaim Is Not Moot

In his second issue, Brown contends that the trial court erred by sustaining Stone's special exceptions to Brown's first supplemental counterclaim and dismissing this claim as moot. We agree.

### 1. Standard of Review

Reviewing a trial court's dismissal of a cause of action following the sustaining of special exceptions involves the examination of two distinct rulings: the decision to sustain the special exceptions and the decision to dismiss the cause of action. *Ford v. Performance Aircraft Servs.*, 178 S.W.3d 330, 334–35 (Tex. App.—Fort Worth 2005, pet. denied); *accord Perry v. Cohen*, 285 S.W.3d 137, 142 (Tex. App.—Austin 2009, pet. denied) (citing *Cole v. Hall*, 864 S.W.2d 563, 566 (Tex. App.—Dallas 1993, writ dism'd w.o.j.) (en banc)). We review a trial court's decision to sustain special exceptions under an abuse-of-discretion standard. *Ford*, 178 S.W.3d at 335 (citing *Mowbray v. Avery*, 76 S.W.3d 663, 678 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied)). Thus,

we will not reverse such a decision unless the trial court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). But "[t]he standard of review of a trial court's dismissal upon special exceptions is *de novo* on the legal question of whether the pleading stated a cause of action." *Sanchez v. Huntsville Indep. Sch. Dist.*, 844 S.W.2d 286, 288 (Tex. App.—Houston [1st Dist.] 1992, no writ) (citing *Krupicka v. White*, 584 S.W.2d 733, 737 (Tex. App.—Tyler 1979, no writ)).

### 2. Brown Neither Waived Nor Invited the Error

Stone asserts that Brown waived any complaint about the trial court's dismissal of his first supplemental counterclaim upon special exceptions by failing to raise the issue in a motion for new trial. But a motion for new trial is not always necessary to preserve such a complaint. *See Parker v. Barefield*, 206 S.W.3d 119, 120–21 (Tex. 2006) (holding that a motion for new trial was not needed to preserve error regarding trial court's order sustaining special exceptions and dismissing appellants' case without first allowing them the opportunity to replead because they had already requested leave to amend and had filed amended pleadings before the trial court sustained the special exceptions, meaning that their request for leave to amend had effectively been denied when the trial court dismissed the case). Because the trial court sustained Stone's special exceptions based upon mootness—a defect of a type that amendment cannot cure—it was not required to give Brown an opportunity to replead before dismissing the counterclaim. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). Under

18

these circumstances, Brown was not required to file a motion for new trial to preserve error. *See Parker*, 206 S.W.3d at 120–21; *cf. Howell v. Coca-Cola Bottling Co. of Lubbock, Inc.*, 599 S.W.2d 801, 802 (Tex. 1980) (holding that a formal motion for new trial is no longer an absolute predicate for appeal).

Stone also asserts that Brown invited the complained-of error by submitting to the court for signature an order sustaining Stone's special exceptions and dismissing Brown's first supplemental counterclaim even though (according to Stone) no hearing had been held on Stone's special exceptions. *See In re G.X.H.*, 627 S.W.3d 288, 301 (Tex. 2021) (discussing invited-error doctrine). But Brown contends that Stone's special exceptions were heard at the pretrial conference, and the record supports this contention. In any event, because there is nothing in the record suggesting that Brown asked the trial court to dismiss or strike his first supplemental counterclaim—and we cannot conceive of any reason why he would have done so—the invited-error doctrine is inapplicable. *See In re Dep't of Fam. & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009) (orig. proceeding) (noting that the invited-error doctrine applies when "a party requests the court to make a specific ruling, then complains of that ruling on appeal").

Based on the foregoing, we conclude that Brown preserved his second issue.

### 3. The Trial Court Erred by Dismissing Brown's First Supplemental Counterclaim

In September 2021, Brown filed his first supplemental counterclaim in which he asserted that the deeds supporting Stone's argument for the Alleged Easement's existence were defective because they were not signed by Ota B. King, who purportedly held an undivided one-half interest in the Alleged Easement land at the time the deeds were executed and recorded. Stone filed special exceptions in which he argued that Brown's first supplemental counterclaim was moot because the trial court had already ruled that Stone was a co-owner of the Alleged Easement land, meaning that he did not need an easement. In October 2022, the trial court signed an order sustaining Stone's special exceptions and dismissing Brown's first supplemental counterclaim as moot—and therefore incurable by repleading. *See Neff v. Brady*, 527 S.W.3d 511, 528 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (recognizing that "[g]enerally, when the trial court sustains special exceptions, it must give the pleader an opportunity to amend the pleading" but if "the pleading defect is of a type that amendment cannot cure," the court may dismiss the cause of action).

Because the trial court sustained Stone's special exceptions based on its previous ruling that Stone had an ownership interest in the Alleged Easement land—a ruling that we have determined to be erroneous—this ruling was likewise erroneous. And because the trial court's decision to dismiss Brown's supplemental counterclaim as incurable was also predicated on its erroneous ownership-interest ruling, its

dismissal of Brown's supplemental counterclaim was similarly erroneous.[8]

Accordingly, we sustain Brown's second issue.

## C. The Alleged Easement Was Extinguished by Merger

In his third issue, Brown contends that the trial court erred by rendering summary judgment that Stone's claimed easements, including the Alleged Easement, had not been extinguished by merger and were therefore valid and enforceable. We agree.

"Under the merger doctrine, if an easement exists and then the owner of that easement acquires a greater estate, the two estates merge into the greater of the two and the lesser is extinguished." *Cecola v. Ruley*, 12 S.W.3d 848, 852 (Tex. App.—Texarkana 2000, no pet.) (op. on reh'g). This is because a property owner "no longer needs an easement across his own property" since his ownership by itself "gives him the right to use all of the property." *Id.*; *see Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 578 n.7 (Tex. App.—San Antonio 2017) ("The merger doctrine proceeds from a recognition that a person cannot have an easement in his or her own land because all the uses of an easement are fully

---

[8]In his special exceptions, Stone alternatively argued that Brown's first supplemental counterclaim was meritless and should be stricken because Ota B. King had ratified the Alleged Easement. But because the trial court's order expressly states that the court sustained Stone's special exceptions and dismissed Brown's first supplemental counterclaim on mootness grounds, we do not consider Stone's alternative ratification theory. *See Shook v. Gilmore Tatge Mfg. Co.*, 951 S.W.2d 294, 296 (Tex. App.—Waco 1997, pet. denied) ("[I]f the dismissal order lists a particular reason for the dismissal, then the appellate court's review is limited to whether the dismissal was proper based on the ground specified by the trial court.").

comprehended in the general right of ownership." (quoting *ACI Worldwide Corp. v. Churchill Lane Assocs., LLC*, 847 F.3d 571, 580 (8th Cir. 2017))), *aff'd*, 593 S.W.3d 324 (Tex. 2020); *see also Howell v. Estes*, 12 S.W. 62, 62 (Tex. 1888) ("The principle is elementary that, to constitute an easement, the dominant and the servient estates must be held by different owners; and when the owner of an estate enjoys an easement over another, and acquires title to the latter, the easement is thereby extinguished."). Thus, "an easement is terminated 'when all the benefits and burdens come into a single ownership.'" *Teal Trading & Dev., LP*, 534 S.W.3d at 579 (quoting Restatement (Third) of Property: Servitudes § 7.5).

Here, it is undisputed that Smallwood acquired the North, West, and East Lots in 1997 and that the North and East Lots were united under a single owner again when Bordlemay acquired them in 2006. Nevertheless, Stone argues that the Alleged Easement was not extinguished by merger because both Smallwood and Bordlemay took the lots subject to retained vendor's liens. According to Stone, because the holder of a vendor's lien retains legal title until the purchase price is fully paid, *see Flag-Redfern Oil Co.*, 744 S.W.2d at 8, and because the vendor's liens on the various lots were held by different parties, the lots were never truly united under common ownership, and consequently, the easements were never extinguished by merger. Thus, the question we must decide is whether the lots "c[a]me into a single ownership" when Smallwood (and later Bordlemay) purchased them subject to

22

retained vendor's liens. *See Teal Trading & Dev., LP*, 534 S.W.3d at 579. Given the merger doctrine's underlying premise, we conclude that they did.

As noted, the merger doctrine is based on the idea that a property owner does not need an easement because he already has the right to use the property by virtue of his ownership interest. *See id.* at 578 n.7; *Cecola*, 12 S.W.3d at 852; *see also Uptown Cars, Inc. v. Newcastle Mgmt. Tr.*, No. 03-22-00422-CV, 2024 WL 4643295, at *13 (Tex. App.—Austin Oct. 31, 2024, no pet.) (op. on reh'g) (quoting *Cecola*, 12 S.W.3d at 852). When a land purchaser receives a deed conveying title to him subject to a retained vendor's lien, he receives equitable title to the property and has the right to use and possess it; the "reserved vendor's lien . . . essentially [constitutes] a mortgage coupled with a power of rescis[s]ion on default [and] operates only as security for payment of the purchase price." *Babb v. McGee*, 507 S.W.2d 821, 823 (Tex. App.—Dallas 1974, writ ref'd n.r.e.); *see* 5 Aloysius A. Leopold, *Texas Practice Series: Land Titles and Title Examination* § 30.2 (3d ed. 2024). Because the holder of a vendor's lien deed (i.e., the vendee) has the right to use and possess the property and because the vendor's retained title is limited "to the character of security for the purchase-money debt," *Carey v. Starr*, 56 S.W. 324, 325 (Tex. 1900), we conclude that the vendee—not the vendor—is the relevant "owner" for merger-doctrine purposes.[9] Thus, when

---

[9]Our conclusion that the vendee, as the holder of equitable title, constitutes the property owner for merger-doctrine purposes is reinforced by the fact that equitable-title holders have been held to be property owners in a variety of other legal contexts. *See AHF-Arbors at Huntsville I, LLC v. Walker Cnty. Appraisal Dist.*, 410 S.W.3d 831,

23

Smallwood acquired all of the lots by vendor's lien deed, they came into a single ownership.[10] *See Teal Trading & Dev., LP*, 534 S.W.3d at 579.

Relying primarily on *Flag-Redfern Oil Co.*, Stone argues that even if the lots were united under common ownership, the merger-of-estates doctrine requires the satisfaction of six elements before a merger could occur. *See* 744 S.W.2d at 9. However, neither *Flag-Redfern Oil Co.* nor any of the other cases relied upon by Stone involved the extinguishment of easements through merger, and we are not aware of any cases applying the six-element merger-of-estates test in this context.[11] Because the

---

837, 839 (Tex. 2012) (defining "equitable title" and holding that it is sufficient to establish ownership for the purpose of exemptions under the Tax Code); *City of Garland v. Wentzel*, 294 S.W.2d 145, 147 (Tex. App.—Dallas 1956, writ ref'd n.r.e.) (holding that the equitable-title holder is the "owner of the land" and thus has the right to recover damages for a permanent nuisance because the equitable-title holder "must bear the loss or depreciation" caused by the nuisance); *Hoffman v. Cont'l Supply Co.*, 120 S.W.2d 851, 854 (Tex. App.—Eastland 1938) (concluding that the holder of an equitable title to an oil or mineral leasehold interest in land was an "owner" of such interest for purposes of the materialmen's lien statute), *rev'd on other grounds*, 144 S.W.2d 253 (Tex. 1940); *see also Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 585 S.W.3d 530, 534 (Tex. App.—Houston [14th Dist.] 2019) ("Texas courts generally have defined 'ownership' for taxation purposes in terms of the person or entity holding legal *or equitable* title." (emphasis added)), *aff'd*, 624 S.W.3d 535 (Tex. 2021).

[10]We note that even if the retained vendor's liens were sufficient to prevent unity of ownership, the Alleged Easement would have been extinguished when Smallwood paid off the vendor's liens. Stone argued in the trial court that Smallwood's transfer of the West Lot to Herring before she paid off the vendor's liens prevented the Alleged Easement from being extinguished by merger. But the transfer to Herring is irrelevant here because Brown's and Stone's properties would still have been united under single ownership after the sale of the West Lot to Herring.

[11]*Flag-Redfern Oil Co.* involved the merger of legal and equitable title, 744 S.W.2d at 9, and the other principal case on which Stone relies, *Steger v. Muenster*, 134 S.W.3d

24

merger doctrine as applied to easements is concerned with unification of ownership of separate parcels, not the unification of various estates within the same parcel, we conclude that *Flag-Redfern Oil Co.*'s six-element test does not apply.[12]

Having determined that Smallwood was the relevant owner for merger-doctrine purposes and that *Flag-Redfern Oil Co.*'s six-element test does not apply in this context,

---

359, 375–77 (Tex. App.—Fort Worth 2003, pet. denied), involved the merger of leaseholds and inherited estates. The merger-of-estates doctrine has also been applied to the merger of first and second liens, *Smith v. U.S. Nat'l Bank of Galveston*, 767 S.W.2d 820, 822–23 (Tex. App.—Texarkana 1989, writ denied); mineral lessee and lessor interests, *Ferguson v. Ragland*, 243 S.W. 721, 723 (Tex. App.—San Antonio 1922, writ ref'd); and life estate and remainder interests, *Montgomery v. Browder*, 930 S.W.2d 772, 781 (Tex. App.—Amarillo 1996, writ denied) (op. on reh'g).

[12]We note that even if the six-element merger-of-estates test applied, summary judgment that no merger occurred would nevertheless have been improper because fact issues existed. Under *Flag-Redfern Oil Co.*, for the doctrine of merger to apply, the following elements must be present: (1) there must be a greater and lesser estate; (2) both estates must unite under the same owner; (3) both estates must be owned in the same right; (4) there must not be an intervening estate; (5) merger must not be contrary to the owner's intent; and (6) merger must not be disadvantageous to the owner. 744 S.W.2d at 9. Stone argued that the fifth and sixth elements were not present, but he did not offer any summary-judgment evidence disproving them. As to the fifth element, he offered no direct evidence of Smallwood's intent; instead, he argued that Smallwood's plan to set up a homeowners' association (HOA) showed that she did not want the easements to be extinguished. But Smallwood's plan to set up an HOA does not prove that she intended to retain the historical easements; it is equally likely that she intended to move boundary lines and create new easements. As to the sixth element, Stone argued that extinguishing the easements would be disadvantageous because it would result in the inability to access the property and would be disadvantageous to the vendor who retained legal title. But the sixth element is concerned with disadvantage to the *owner*, and Smallwood, as owner, could access all of the various lots without the need for an easement (or could create new easements as she saw fit). Further, as discussed above, the vendor's retained legal title under a vendor's lien is limited "to the character of security for the purchase-money debt." *Carey*, 56 S.W. at 325. Because the holders of the vendor's liens were not true owners, any disadvantage to them would be irrelevant.

25

we conclude that all easements that burdened the Alleged Easement land were extinguished when Smallwood acquired all of the relevant lots, thereby bringing "all the benefits and burdens . . . into a single ownership." *See Teal Trading & Dev., LP*, 534 S.W.3d at 579; *see also Howell*, 12 S.W. at 62; *Cecola*, 12 S.W.3d at 852. Thus, the trial court erred by granting Stone's summary-judgment motion and declaring that the easements, including the Alleged Easement, had not been extinguished by merger. Accordingly, we sustain Brown's third issue.

## D. We Need Not Address Brown's Remaining Issues

Brown's fourth and fifth issues concern the sufficiency of the evidence to support the jury's verdict on Stone's nuisance claim and its award of mental-anguish damages based on that claim; his sixth issue concerns the trial court's decision not to include a waiver-of-mental-anguish-damages instruction in the jury charge based on Stone's agreement to leave the fence in place during the litigation; and his seventh issue concerns the trial court's redefinition of an easement described as the "L-Shaped Easement" in its final judgment to allow for vehicular traffic even though Stone did not plead for this relief.

Going into the jury trial on whether Brown's fence was a nuisance, the trial court had already erroneously decided that the fence impeded Stone's access to his claimed easements, including the Alleged Easement, and was on property that Stone co-owned. Had the trial court correctly determined that Stone did not have an ownership interest in the Alleged Easement land and that the Alleged Easement had

26

been extinguished by merger, Stone's nuisance claim would have turned on whether he had a reasonable expectation that Brown would never build a standard fence along his own property line, not on whether Stone had a reasonable expectation that Brown would not build a fence that impeded Stone's easement and divided his property. *See Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003) (defining "nuisance" as "a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it"); *see also Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 597 (Tex. 2016) ("'Unreasonable' in nuisance law . . . does not refer to risk-creating conduct of the defendant but to the reasonable expectations of a normal person occupying the plaintiff's land." (quoting Dan B. Dobbs, Paul T. Hayden, & Ellen M. Bublick, *The Law of Torts* § 401, at 625 (2d ed. 2011))). Thus, the trial court's erroneous summary judgment significantly impacted the trial proceedings on Stone's nuisance claim. Under these circumstances, we must remand for a new trial on that claim. *See Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, 561 S.W.3d 263, 281 (Tex. App.—Houston [14th Dist.] 2018, pets. denied) (op. on reh'g) ("As the entire trial proceedings were premised on erroneous summary judgment orders, the more prudent course of action is to restore the parties to the status quo at the time of the summary judgment rulings and begin anew."); *see also Ramirez v. Sanchez*, No. 01-21-00417-CV, 2023 WL 2919545, at *9–10 (Tex. App.—Houston [1st Dist.] Apr. 13, 2023, no pet.) (mem. op.) (remanding matters to the trial court "in their entirety"

because trial court's erroneous summary-judgment rulings on appellant's "claims to modify conservatorship, to designate the primary residence of the child, and his request for child support" affected the presentation of evidence at the subsequent bench trial on appellee's counterpetition to increase child support). Accordingly, we need not address Brown's fourth, fifth, and sixth issues, all of which pertain to Stone's nuisance claim or the damages awarded based on that claim. *See* Tex. R. App. P. 47.1.

Further, because Brown's seventh issue concerns the trial court's redefinition of the L-Shaped Easement and because we have already determined that all of the easements at issue were extinguished by merger, we need not address Brown's seventh issue. *See id.*

## III. CONCLUSION

Having sustained Brown's first three issues, we reverse the trial court's final judgment, summary judgment, and order granting Stone's special exception to Brown's first supplemental counterclaim; render judgment that all easements that burdened the Alleged Easement land have been extinguished by merger; and remand the case for a new trial consistent with this opinion on all remaining issues.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: April 3, 2025

28